**WALKER v. LYKES BROS. S. S. CO., Inc.**
No. 114, Docket 22180.

United States Court of Appeals
Second Circuit.

Argued Dec. 7, 1951.

Decided Jan. 10, 1952.

Benjamin B. Sterling and Herman N. Rabson, New York City, for plaintiff-appellee.

Tompkins, Boal & Tompkins and Arthur M. Boal, New York City, for defendant-appellant.

Before SWAN, Chief Judge, and L. HAND and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment for the plaintiff, entered on the verdict of a jury in an action to recover damages for personal injuries suffered, while acting as master of one of the defendant's ships. The action was under the Jones Act, 46 U.S.C.A. § 688, and charged that the defendant had been negligent in allowing the plaintiff "to be struck by a steel filing cabinet, when a drawer thereof was negligently caused to open suddenly and with great force." The evidence was that there were two steel filing cabinets in the office of the plaintiff, each of which had four steel drawers, each drawer being held in place by a separate catch. The plaintiff testified that six of the eight catches were out of order and did not hold their drawers when the ship rolled, so that on occasion a drawer would roll out upon the floor. The catches presumably were in the same condition when the plaintiff took command of the ship at Staten Island, New York, on November 14, 1946, for he discovered the defects soon after she broke ground. They continued to be in disrepair until the accident on March 11, 1947, when, while he was passing beside the cabinet, the ship's roll dislodged one of the drawers and threw it against his shin, causing a wound which resulted in serious injury to his leg. His claim was that the faulty catches had come to the attention of others of the defendant's employees, who had neglected to mend them, and that this was actionable negligence within the Act. The defendant's position was that the plaintiff, as master, was himself charged with the duty of mending the catches; that he had ample chance to do so, but had failed, and that in any event he might have prevented the drawers from leaving the cabinet by locking them by devices which, however, the plaintiff swore were also out of order. The judge refused to direct a verdict for the defendant as requested and instructed the jury that they were to decide whether it was negligent to allow the ship to break ground with the catches as they were, and not to mend them before the accident. If they thought that the defendant had failed in this duty, they were then to ask themselves whether the plaintiff had by his own negligence "contributed to bringing about the result." "Did he take all such steps to prevent injury to himself and others aboard the ship * * * as a reasonably prudent and reasonably careful master would have taken under the circumstances?" If he did not, they must reduce his recovery in proportion to the gravity of his fault.

 It has been the custom to speak of contributory negligence as a failure by the injured party to discharge a duty owed towards the wrongdoer; and, although it seems anomalous to think of the injured party as being under a duty not to expose himself to the chance that the wrongdoer may himself be delinquent, it makes no practical difference whether one adopts that form of words, or says that the duty of the wrongdoer does not extend to, or is modified in its scope in the case of, those who do not look out for themselves. We shall therefore accept the conventional rubric and think of contributory negligence as the breach of a duty to the wrongdoer. The important thing in situations like that at bar is to distinguish between such a duty, which the law imposes upon the injured person, regardless of any conscious assumption of a duty towards the wrongdoer, and a duty which the injured person has consciously assumed as a term of his employment. By "contributory negligence" which results in no more than reducing the amount of an employee's recovery, the Act means the first; the second is a bar to any recovery. This the Supreme Court has decided in a number of cases beginning in 1916 with Great Northern Railway Company v. Wiles, 240 U.S. 444, 36 S.Ct. 406, 60 L.Ed. 732;[1] and it indicated no retreat from the doctrine in Rocco v. Lehigh Valley R. R.

1. Frese v. Chicago, B. & Q. R. R. Co., 263 U.S. 1, 44 S.Ct. 1, 68 L.Ed. 131; Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212; Yadkin R. R. Co. v.

Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743, although there it held that the plaintiff had not in fact violated any duty that he had assumed to his employer. The courts of appeal, ourselves included, have applied it in several cases.[2] The theory apparently is that a momentary inattention to one's own safety—the kind of thing of which we are all guilty every day—should not be treated as so serious a fault as the breach of a duty assumed by the employee for the protection of others, although incidentally it is for his own benefit too. For this reason courts have imputed to Congress an intent to use the term, "contributory negligence," only in the first sense. In the case at bar, since the plaintiff was master of the ship, he fell within this doctrine, because it is well settled that the "duty of the master in the case of damage to the ship is to do all that can be done towards bringing the adventure to a successful termination; to repair the ship, if there be a reasonable prospect of doing so at an expense not ruinous;"[3] just as it is his duty to care for the cargo,[4] or not to overload the ship.[5] Thus, if the plaintiff failed to repair the catches, although he was able to do so, his failure was not only "contributory negligence" in the first sense, but also a breach of his duty to the defendant which barred his recovery absolutely. It will be seen therefore that the case went to the jury under a mistaken view of the plaintiff's rights, when the judge told them to reduce his recovery in proportion to the gravity of his fault and did not tell them to bring in a verdict for the defendant, if the plaintiff was at fault. Hence, if the defendant had raised the point, the judgment could not stand. It did not raise the

point, and for that reason we shall assume for argument that it may not raise it on this appeal. However, it did except to the adequacy of the instructions as the plaintiff's duties as master, and if these exceptions were well taken, the appeal must succeed. We think that at least two exceptions were well taken, and that when these are considered against the background of the evidence as a whole, the case should be retried.

 In that part of his colloquial charge which discussed the issue of "contributory negligence," as we have said, the judge told the jury to decide whether the plaintiff had acted "as a reasonably prudent master:" *i. e.,* whether he had taken "such steps to prevent injury to himself * * * as a reasonably prudent and reasonably careful master would have taken." That was all that he did say in defining the plaintiff's duties, and we shall assume for argument that it would have been enough, if the defendant had been content with it. It was not content. First, it asked the judge to tell the jury that "it was the plaintiff's duty as master of the ship to take appropriate steps to see that the drawer was repaired;" and as part of this request it called his attention to the plaintiff's testimony "that he had an opportunity to have this drawer fixed at San Pedro, California." The judge refused this request on the ground that his colloquial charge had been adequate. Later, however, he told the jury that, because the plaintiff was in command of the ship the crew "were required to obey all reasonable orders given by him"; and later still, he refused to charge "that if the vessel * * * became unsafe during the course * * * of the voyage, it was the

Sigmon, 267 U.S. 577, 45 S.Ct. 230, 69 L.Ed. 796; Unadilla Valley Ry. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224; Southern Ry. Co. v. Youngblood, 286 U.S. 313, 52 S.Ct. 518, 76 L. Ed. 1124.

2. Southern Ry. Co. v. Hylton, 6 Cir., 37 F.2d 843; Paster v. Pennsylvania R. R. Co., 2 Cir., 43 F.2d 908; Van Derveer v. Delaware, L. & W. Ry. Co., 2 Cir., 84 F.2d 979; Atchison, T. & S. F. Ry. Co. v. Ballard, 5 Cir., 108 F.2d 768.

3. Benson v. Chapman, 2 H.L.C. 696, 720; The Roma, 5 Asp. 259; Patton-Tully Transp. Co. v. Turner, 6 Cir., 269 F. 334, 339; Van Den Toorn v. Leeming, D.C.S.D.N.Y., 70 F. 251, 258.

4. Notara v. Henderson (1872), L.R. 7 Q. B. 225; Tronson v. Dent, 8 Moore P.C. 419.

5. The Giles Loring, D.C.D.Me., 48 F. 463, 469.

duty of the master at the next port to see that she was put in a safe and seaworthy condition," and he substituted the statement that "it was the duty of the master to take all reasonable steps to see that safe conditions were maintained aboard the vessel." Finally, he refused to charge that "if the master gave an order to any man to fix this cabinet, that it was the duty of the master to see that the order was carried out." For reasons we shall give, these last two refusals appear to us to have made the charge as a whole inadequate.

The judge apparently thought that after instructing the jury that the plaintiff was bound to take all reasonable steps to "see" that the ship was kept safe, it was unnecessary to go into any details about ports of call, or about enforcing such orders as he gave in those ports. Perhaps that would have been true, had the evidence been different, but as in fact it stood, we think he should have been more specific. The plaintiff had testified that, while the ship was on the high seas, he had several times given orders to members of the crew to mend the catches, and that they had tried to mend them and failed. Although witnesses for the defence contradicted this, the jury was of course free to believe the plaintiff. What he could have done at sea was however different from what he could have done while the ship was in port, and especially in a port where the defendant maintained some sort of agency. There were a number of ports of call. After the ship left Staten Island, the first one was Port Arthur; the next was Port Charles where she lifted cargo; the next was New Orleans where she did so again; the next was Rotterdam where she lay for two weeks; the next was again Port Arthur where apparently she lay for three days; the next was Houston; the next was Galveston where she apparently lay for two or three days; the next was again New Orleans, the defendant's home office, where she lay for four days; and the next and last before the accident was San Pedro, California, where she lay for one day. The plaintiff testified to only two efforts to get the catches mended at any of these ports:

(1) at New Orleans on the first stop he asked the defendant's port engineer to mend the catches; and (2) at Port Arthur on the second stop he filed a written requisition. So far as appears, in neither case did he make any effort to enforce obedience to his wishes.

It seems to us in the light of this testimony that the judge should have directed the jury more concretely than merely to say that the plaintiff was charged with "reasonable" efforts to see that the ship was safe and seaworthy. It is indeed a part of the jury's duty to fix the standard of care which the circumstances should evoke in any given case, and there are no general rules to govern them in their choice. Nevertheless, that does not mean that a defendant may never demand that the judge shall separate different groups of facts and suggest that they may call for different standards. In the case at bar, the plaintiff may well have discharged any duty of care on shipboard where his means were limited; but presumably much more help was available on land. Jurymen are landsmen unfamiliar with the sea; and it was proper— we think it was necessary—to make some such distinction, and especially to impress upon them the fact that a crew's duty to obey orders is not identical with a master's duty to see that his orders were carried out. Duty is one thing, obedience is another; and a ship's master for many purposes is absolute. For the foregoing reasons we think that, as the record stood, and especially in view of the mistaken submission of the issue of "contributory negligence," the errors should not be held to be venial and disregarded. It may be asked, why, if the plaintiff was at fault in failing on so many occasions to make any effective effort to get the catches mended, the judge ought not to have directed a verdict against him. That might have been true, if the burden had not been upon the defendant to prove not only that the plaintiff had been at fault but that his fault had been a cause of his injury, concurrent with the faults of other employees. Even though we assume arguendo that his faults were proved beyond dispute, and that the defendant made a

*prima facie* case that the catches could have been mended at one of the ports of call (for the job could not have been a difficult one), it was for the jury to decide whether they in fact could have been, and it would have been improper to take the issue from them.

Judgment reversed; new trial ordered.