**BOAT DAGNY, Inc., Defendant, Appellant,**

v.

**John TODD, Plaintiff, Appellee.**

**No. 4923.**

United States Court of Appeals First Circuit.

June 9, 1955.

James A. Whipple, Jr., Boston, for appellant.

Leo Schwartz, New Bedford, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

John Todd, master of defendant's fishing vessel, suffered injuries in the middle of the night by a fall on a

slippery, unlighted deck. He filed a complaint against defendant in three counts. The first count was based upon the Jones Act—§ 33 of the Merchant Marine Act of 1920, 46 U.S.C.A. § 688. The third count charged that plaintiff's injuries were due to breach of defendant's warranty of seaworthiness under the general maritime law, in that defendant had failed to provide and maintain reasonably safe and proper appliances and a reasonably safe and proper place to work. We have on this appeal no concern with the second count, for maintenance and cure.

The fishing vessel Dagny, on which plaintiff was employed as master, was on August 26, 1953, out on the last day of a scheduled fishing trip. The vessel was engaged in dredging for scallops, and in accordance with the customary procedure the catch was dumped onto the deck and there processed by the seamen, after which the deck was cleaned by a pressure hose. On the evening in question the last dredging of the day was completed about 6 P.M. The sun set at 8:20 P.M., and as darkness came on the processing of the scallops was continued under deck lights. These lights began to fail about 9:30 P.M. Plaintiff and the vessel's engineer checked the engine which generated electricity for the deck lights and found that the failure of the power was due to lack of proper contact between the points of certain metal brushes and the armature of the generator. Though there was testimony that spare brushes were part of the ship's equipment, plaintiff and the engineer for some reason or other were unable to locate them. They turned to an auxiliary engine designed for use in such emergencies but were unable to obtain sufficient power from this source to restore the deck lights. Plaintiff then directed that the scallops yet unprocessed be jettisoned and had the crew hose down the deck, as well as they were able to do in the dark. This operation was completed about 10 P.M.

The vessel headed back to port. About 2 A.M. plaintiff left the pilothouse to give instructions to the bow lookout. He proceeded along the darkened deck without a flashlight. On his return he stepped upon a fragment of scallop that had not been cleaned off the deck, skidded and fell, thus suffering the injuries for which this action was brought.

On cross-examination the plaintiff admitted that it was his duty, through the engineer, to see to it that the engines were in adequate operating condition, and that he had checked with the engineer about this before the beginning of the voyage. He also admitted that he had not checked to determine whether spare brushes were on board before setting out, and that when the power failure occurred he did not use the ship-to-shore telephone to report the trouble and ask for instructions, although this was the usual practice.

The port engineer, or shore engineer, an employee of the defendant, testified as a witness for the defendant that it was his duty to "keep machinery in repair, make any necessary adjustments and so forth, see it is in operating condition when it leaves port, and also if there are any difficulties experienced they get in touch with me and I help them out." He said that the generator had been completely overhauled in the spring before the accident and that new brushes had been installed several months before this trip started. He stated that when the vessel returned to port and the power failure was reported to him, he had inspected the generator and had found that the brushes, though "slightly worn", were still in serviceable condition; that the power failure had not been caused by defective brushes but by lack of "a little adjustment" on the brush springs so as to give them the proper tension for holding the points of the brushes against the armature. This testimony of defendant's witness, which was uncontradicted, was certainly binding on the defendant.

The trial judge left counts I and III to the jury as alternative theories of

liability, though making it clear that plaintiff would be entitled to only one recovery. In accordance with the provision of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., which is incorporated by reference into the Jones Act, the jury were instructed that the contributory negligence of the plaintiff, if any, would not be a complete bar to recovery, but would only necessitate a diminution of the amount of the plaintiff's damages in proportion to the degree of his contributing fault.

The jury returned a verdict for the plaintiff in the sum of $2800.00 and judgment was entered accordingly.

The only errors asserted on this appeal are with reference to the charge, and to the failure to charge as requested by the defendant. Under Rule 51 of the Federal Rules of Civil Procedure, 28 U.S. C.A., the defendant has duly reserved only a narrow objection, as will appear from the following colloquy which occurred at the conclusion of the charge:

"Mr. Whipple: I will object to that part of his charge, your Honor, in which you say contributory negligence cuts it down. I think that is a bar to the plaintiff's recovery.

"The Court: Contributory negligence?

"Mr. Whipple: Yes.

"The Court: That is a bar to recovery?

"Mr. Whipple: Here is a case on it right here, decided by Judge Learned Hand in the New York District. He says there are two degrees of contributory negligence.

"The Court: No. Take your exception.

"Mr. Whipple: Yes, sir."

The above reference by defendant's counsel to a decision by Judge Learned Hand was to the case of Walker v. Lykes Bros. S. S. Co., Inc., 2 Cir., 1952, 193 F.2d 772, which was cited as the basis for a requested charge that it was the duty of the plaintiff as master of the vessel to see that defective conditions aboard the ship were repaired, and that "The

Master's failure to have the brushes replaced upon the generator was a complete bar to the Master's recovery under the Jones Act or under a count for unseaworthiness".

We think the objection to the charge is not well taken, and that there was no error in refusing to give the requested charge which in substance was a motion for a directed verdict for the defendant.

In the first place, the jury would have been warranted in finding on the evidence that the ship's engineer, who was primarily responsible for the proper functioning of the engines, was negligent in not discovering the true cause of the power failure and in not promptly restoring the power for the deck lights by making the necessary adjustment in the tension of the brush springs in the generator. Such negligence unnecessarily increased the risk of injuries to all the members of the crew (including the plaintiff) who might have occasion in the course of their duties to be out on the darkened deck; and since the fellow servant rule has been abolished as a defense under the Act, such negligence by the engineer was prima facie a breach of defendant's duty to the plaintiff, as well as to the other members of the crew. Also, such negligence might properly be found to have been the proximate cause of the injury suffered by the plaintiff.

It is true that the plaintiff in the due performance of his supervisory responsibilities as master might perhaps have been able to see to it that the engineer got the electric power restored. But if so, his failure to do this was but a species of contributory fault on the plaintiff's part which would go only in diminution of damages instead of being a complete bar to the action. Judge Hand does indicate, in Walker v. Lykes Bros. S. S. Co., Inc., supra, that where the master of a ship contributes to his own injury by reason of a breach of his supervisory duties owed to his employer, this is not the type of "contributory negligence" which results under the Act

in a mere diminution of the amount of recovery, but rather is a breach of duty to the shipowner which bars the master's recovery "absolutely." For an earlier discussion by Judge Hand of the Supreme Court decisions from which this supposed distinction was derived, see Van Derveer v. Delaware, L. & W. R. Co., 2 Cir., 1936, 84 F.2d 979.

We cannot find in the Act any suggestion that the Congress had in mind this refinement between the two species of contributory fault. It is significant that Judge Hand felt himself to be bound by cases which were decided before the 1939 amendment to the Federal Employers' Liability Act, which plugged up what the Congress deemed to be a leak in the original Act, by abolishing specifically the defense of assumption of risk. 53 Stat. 1404. In Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, the Supreme Court discussed at length the broad scope and purpose of this amendment. The Supreme Court said, 318 U. S. at pages 62–64, 63 S.Ct. at page 449:

"Unfortunately, from the standpoint of legal clarity, the [original] Act as interpreted required careful distinction between assumption of risk and contributory negligence, since assumption of risk was an absolute bar to recovery while contributory negligence merely reduced the amount of recovery. The great uncertainty existing prior to the Act as to what the margin between these doctrines was thus became of real significance. The language of the statute itself seemed to impel the courts to practice 'the niceties, if not casuistries, of distinguishing between assumption of risk and contributory negligence, conceptions which never originated in clearly distinguishable categories, but were loosely interchangeable until the statute attached such vital differences to them.' Pacheco v. New York, N. H. & H. R. Co., 2 Cir., 15 F.2d 467. For an attempt to distinguish between the doctrines, see

Schlemmer v. Buffalo, R. & P. Ry. Co., 205 U.S. [1], 12, 27 S.Ct. [407], 409, 51 L.Ed. 681, and the same case at 220 U.S. 590, 596, 31 S.Ct. 561, 563, 55 L.Ed. 596.

"The assumption of risk clause in the statute became the subject of endless litigation. The Federal Code Annotated and the United States Code Annotated devote over thirty pages each of fine type merely to the citation and brief summary of the reported decisions; and the number of unreported and settled cases in which the defense was involved must run into the thousands. Aside from the difficulty of distinguishing between contributory negligence and assumption of risk many other problems arose. One of these was the application of the 'primary duty rule' in which contributory negligence through violation of a company rule became assumption of risk. Unadilla Valley Ry. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224; Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212. Other complications arose from the introduction of 'promise to repair', 'simple tool', and 'peremptory order', concepts into the assumption doctrine. In the disposition of cases the question of a plaintiff's assumption of risk has frequently been treated simply as another way of appraising defendant's negligence, as was done by the court below in the instant case.

"It was this maze of law which Congress swept into discard with the adoption of the 1939 amendment to the Employers' Liability Act, releasing the employee from the burden of assumption of risk by whatever name it was called. The result is an Act which requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed."

In Louisiana & Arkansas Ry. Co. v. Johnson, 1954, 214 F.2d 290, certiorari

denied 1954, 348 U.S. 875, 75 S.Ct. 111, the Court of Appeals for the Fifth Circuit, discussing the earlier decisions in Unadilla Valley Ry. Co. v. Caldine, 1928, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224; Southern Ry. Co. v. Youngblood, 1932, 286 U.S. 313, 52 S.Ct. 518, 76 L.Ed. 1124, and Davis v. Kennedy, 1924, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212, had this to say, 214 F.2d at page 292:

"All of these cases were decided before the 1939 amendment to the Federal Employer's Liability Act, now brought forward as 45 U.S.C.A. § 54, did away with the defense of assumption of risk. At that time, the so-called 'primary duty rule' was applied to the conductor in Unadilla Valley Ry. Co. v. Caldine, supra, and Southern Ry. Co. v. Youngblood, supra, and to the engineer in Davis v. Kennedy, supra. Following the enactment of the 1939 amendment, the Supreme Court held that 'every vestige of the doctrine of assumption of risk was obliterated from the law' and that the ' "primary duty rule" ' in Unadilla Valley Ry. Co. v. Caldine, supra, and Davis v. Kennedy, supra, had been 'swept into discard'. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58, 63, 64, 63 S.Ct. 444, 87 L.Ed. 610. Since that decision, in cases arising under the Federal Employer's Liability Act, even the engineer has been held not barred by the 'primary duty rule', Atlantic Coast Line R. Co. v. Mangum, 250 Ala. 431, 34 So.2d 848, 852; Atlantic Coast Line R. Co. v. Anderson, 200 Ga. 801, 38 S.E.2d 610, see also Keith v. Wheeling & L. E. Ry. Co., 6 Cir., 160 F.2d 654, 657."

█ In the second place, the defendant's requested instruction to the effect that the master's failure to have the brushes replaced upon the generator was a complete bar to the master's recovery under the Jones Act was based upon a view of the facts which the jury was certainly not obliged to accept under the evidence, as above indicated. The request was based upon an assumption that an unseaworthy condition arose during the voyage in that the lights became dim on the deck of the vessel by reason of wear of the generator brushes and that the master "did not perform his duty to render the vessel seaworthy in replacing the generator brushes". From the testimony of the port engineer as a defense witness, it could have been found that the difficulty was not due to defective brushes and the failure to replace the same with spare brushes, but was due rather to the failure of the ship's engineer to make the necessary adjustment of the brush springs so as to give them the proper tension for holding the points of the brushes against the armature. For this reason alone, it was not error for the trial judge to refuse to give the aforesaid binding instruction.

The judgment of the District Court is affirmed.