**HUDSON WATERWAYS CORPORA-TION et al., Appellant,**

v.

**William J. SCHNEIDER, Appellee.**

No. 20429.

United States Court of Appeals
Ninth Circuit.

Aug. 25, 1966.

Graydon S. Staring, Alf R. Brandin, Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., for appellant.

Martin J. Jarvis, Jarvis, Miller & Stender, San Francisco, Cal., for appellee.

Before CHAMBERS, POPE and BARNES, Circuit Judges.

POPE, Circuit Judge.

This is an appeal from a judgment in favor of the libelant in a seaman's action in admiralty for damages for personal injuries under the Jones Act, 46 U.S.C. § 688, and under the general maritime law.

The libelant, William J. Schneider, who is the appellee in this action, is a licensed marine engineer. At the time of the accident he was employed by the appellant as Third Assistant Engineer on board the SS. TRANSORLEANS, owned and operated by the appellant. The ship was then in navigable waters en route from San Francisco to Panama.

About noon on January 27, 1964, Schneider was ordered by the First Assistant Engineer to find out what was wrong with the stand-by air compressor, which had stopped running, and to get it going again. Schneider was qualified to undertake the repair of an air compressor of this type. In obedience to these orders, Mr. Schneider first checked the master panel on the operating platform and confirmed that the electric power was on leading to the standby air compressor unit; he then proceeded to the air compressor, threw the knife switch to the "on" position and engaged the starting button for automatic operation, but the unit did not start. Libelant next reached for the metal manual control switch box to start the unit by tripping the manual trigger switch on the outside of the box. This box was loose and not properly secured to the air compressor unit. Libelant did not know that there was wet, deteriorated and exposed wiring inside the box. He intended to steady the manual control switch box with his left hand and to trip the trigger switch with his right hand. As he touched the box the bare wire inside made contact with the metal of the box and he received a severe electrical shock which caused him permanent injuries.

The trial court found and concluded that: "2. Libelant's injuries and damages were directly and proximately caused by the unseaworthiness of respondent's vessel the SS. TRANSORLEANS. 3. Libelant's injuries and damages were also directly and proximately caused by the negligence of the respondent. 4. Libelant was not contributorily negligent herein."

Two primary issues are raised by this appeal: whether the doctrine of seaworthiness protects a seaman injured

while repairing a defective appliance; and whether the appellant in this case was guilty of negligence. Since we choose to dispose of the case on the grounds of unseaworthiness, we need not consider the correctness of the trial court's finding of negligence.

Before discussing the facts here and just what was wrong with the switch box which caused the injuries, we refer to the decisional definitions of what unseaworthiness is.

■ The modern rule requires "that things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for which they are to be used." Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 213, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297; Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941. The purpose of the manual control switch box involved in the instant case was to activate the standby air compressor. Because it was unbolted and contained deteriorated wiring, it was unfit for that purpose. It was therefore unseaworthy.

■ The duty of the owner to provide a seaworthy ship is absolute and non-delegable. Mahnich v. Southern S.S. Co., 321 U.S. 96, 102, 64 S.Ct. 455, 88 L.Ed. 561; Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099.

The doctrine of seaworthiness has been developed to give special protection to seamen because of their unique position in society. In Socony Vacuum Oil Co. v. Smith, 305 U.S. 424, 430, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265, the Court stated that "The seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman. His complaints to superior officers of unsafe working conditions not infrequently provoke harsh treatment. He cannot leave the vessel while at sea. Abandonment of it in port before his discharge, to avoid unnecessary dangers of employment, exposes him to the risk of loss of pay and to the penalties for desertion. In the performance of duty he is often under the necessity of making quick decisions with little opportunity or capacity to appraise the relative safety of alternative courses of action. Withal, seamen are the wards of the admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circumstances attending their calling."

■ One factor contributing to this peculiar status of the seaman is that he is obliged to obey whatever order he is given, under pain of severe penalties. "He cannot hold back and refuse prompt obedience because he may deem the appliances faulty or unsafe." Norris, The Seaman as Ward of the Admiralty, 52 Mich. L. Rev. 479, 497 (1954). This has been the case in the past: "From the earliest historical period the contract of the sailor has been treated as an exceptional one, and involving, to a certain extent, the surrender of his personal liberty during the life of the contract." Robertson v. Baldwin, 165 U.S. 275, 282, 293, 17 S.Ct. 326, 329, 41 L.Ed. 715. The duty of obedience has not lessened with the passage of time. He must obey the lawful orders of the master and of his superior officers, and for wilfully disobeying the master's commands he may be punished by being clapped in irons. 46 U.S.C. § 701(4) (5).

■ Because of this unique status of seamen, necessitated by the rigors of the sea, the courts have long since decided that the burden of the risks incident to their calling should be borne by the shipowners. The Supreme Court in Seas Shipping Co., Inc. v. Sieracki, supra, (328 U.S. pp. 93–94, 66 S.Ct. p. 877) referred to "the hazards of marine service which unseaworthiness places on the men who perform it. These, together with their helplessness to ward off such perils and the harshness of forcing them to shoulder alone the resulting personal disability and loss, have been thought to jus-

tify and to require putting their burden, in so far as it is measurable in money, upon the owner regardless of his fault. * * * [H]e is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost." See also Rodriguez v. Coastal Ship Corp., 210 F.Supp. 38, 42–43 (S.D.New York).

These considerations have led the courts constantly to expand the doctrine of seaworthiness. In Huff v. Matson Navigation Co., 338 F.2d 205, 216 (9 Cir.), this court quoted with approval the following: "The obvious trend of the Supreme Court decisions is toward providing ever increasing protection for crewmen, longshoremen and even others employed by independent contractors who may be called upon to work aboard vessels." And we stated: "This trend can be noted by examining numerous recent cases, * * * and we do not choose to challenge that trend in this decision."

■■ Affirmative evidence that the owner acted with due diligence will not relieve him of liability for injury occasioned by unseaworthiness. Mahnich v. Southern S.S. Co., supra, 321 U.S. at p. 100, 64 S.Ct. 455. Norris, The Law of Seamen, Vol. 2, Sec. 609 (2d ed.). Schneider's superior officer knew the compressor was not working. He may not have known why. But even if the appellant had neither actual nor imputed notice of the defective switch box, and even if it acted with due care in ordering Schneider to repair the air compressor, and hence was guilty of no negligence, none of these facts would compel reversal of the lower court's holding of liability for unseaworthiness. Mitchell v. Trawler Racer, Inc., supra; Huff v. Matson Navigation Co., supra.

■ Appellant contends that since Schneider was told that the air compressor was defective and he was ordered to find out what was wrong with it and to repair it, he should not be allowed to recover for an injury received in the discharge of this duty. This contention has no merit. Assumption of risk is not a defense against an action brought under the seaworthiness doctrine. Palermo v. Luckenbach S.S. Co., Inc., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3. "Whether [Plaintiff] knew of the defective condition of the rope does not appear, but in any case the seaman, in the performance of his duties, is not deemed to assume the risk of unseaworthy appliances." Mahnich v. Southern S.S. Co., supra, 321 U.S. at p. 103, 64 S.Ct. at p. 459.

■ Appellant also contends that the trial court erred in finding that Schneider was not guilty of contributory negligence. This argument is based upon the claim that Schneider was negligent in his handling of the defective switch during his attempt to repair the compressor. As to this, there is conflicting testimony in the record. We cannot say that the court's finding was clearly erroneous.

Appellant contends that Schneider is barred from any recovery because he breached the "primary duty rule" established by Walker v. Lykes Bros. Steamship Co., Inc., 2 Cir., 193 F.2d 772. This rule provides that "an employee may not recover against his employer for injuries occasioned by his own neglect of some independent duty arising out of the employer-employee relationship. Their result turns * * * upon the employer's independent right to recover against the employee for the non-performance of a duty resulting in damage to the employer, which in effect offsets the employee's right to recover against the employer for failure to provide a safe place to work." Dixon v. United States, 219 F.2d 10 (2d Cir.).

■ However, here appellant has failed to prove that Schneider, the Third Assistant Engineer, was charged with the primary duty to inspect, repair and maintain the electrical system in question. There is evidence that he had made a routine tour of inspection of the engine room a few hours before the accident, but this does not establish that Schneider had a duty to inspect the inside of the switch box. To hold otherwise would be to bar any engineer on watch from recovery for

injury resulting from any dangerous condition in the engine room, no matter how latent that condition might be. Schneider testified in response to questions by the appellant, that it was the duty of the First Engineer, and not Schneider's duty, to inspect the wiring.[1]

The primary argument of appellant is based upon its erroneous assumption that the action for unseaworthiness is based upon contract—that the shipowner's duty is one founded upon a "warranty of seaworthiness". Appellant argues that it is the term " 'warranty' which characterizes the obligation." It says that since Schneider was aware that an appurtenance was broken or malfunctioning and he was sent to repair it, "the shipowner cannot be said to warrant that particular item as reasonably fit for its intended use."

It is true that the cases frequently refer to a warranty of seaworthiness, but analysis of the cases discloses that the use of such language cannot be construed to mean that the shipowner's obligation arises from contract. The Supreme Court made this especially clear when it extended the right to recover for unseaworthiness to longshoremen doing seamen's work, in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, and in a number of cases thereafter. Thus in Reed v. The Yaka, 373 U.S. 410, 414, 83 S.Ct. 1349, 1353, 10 L.Ed.2d 448, it was said: "In particular, we pointed out several times in the Sieracki case,[2] which has been consistently followed since, that a shipowner's obligation of seaworthiness cannot be shifted about, limited, or escaped by contracts or by the absence of contracts and that the shipowner's obligation is rooted, not in contracts, but in the hazards of the work." Such analysis of the shipowner's obligation was essential to those decisions, for in most cases the longshoreman who recovered had no contractual relation whatever with the shipowner. Thus in Petterson v. Alaska S.S. Co., Inc., 9 Cir., 205 F.2d 478, aff'd. sub nom. Alaska S.S. Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, the longshoreman who recovered was injured through the breaking of a block owned and brought on the ship by the stevedoring company. Liability of the shipowner was upheld though it did not own the block, or control it, and though it was not proven that the shipowner had ever even seen it.

The position taken here by appellant that the duty in respect to seaworthiness does not apply to Schneider, under the facts here present, is in essence an attempt to have us hold that this duty was in substance passed over to Schneider. Such a holding cannot be reconciled with the oft-stated proposition that the shipowner's duty "is one he cannot delegate".

The judgment is affirmed.

---

1. There is serious question as to the application of the rule of Walker v. Lykes Bros. Steamship Co., Inc., supra, in a case of this kind. The rule itself was questioned by the same court in which it was rendered. See Dunbar v. Henry Du Bois' Sons Co., 2 Cir., 275 F.2d 304. Also Boat Dagney, Inc. v. Todd, 1 Cir., 224 F.2d 208. In Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63, 63 S.Ct. 444, 87 L.Ed. 610, the "primary duty rule" was equated with assumption of risk, something which has been held not to be a defense in a suit for unseaworthiness. Ballwanz v. Isthmian Lines, Inc., 4 Cir., 319 F.2d 457, 462: "If the doctrine of seaworthiness means anything, it is totally repugnant to the doctrine of assumption of risk on the part of seamen." And see, accord: Movible Offshore Company v. Ousley, 5 Cir., 346 F.2d 870, 873: "Nevertheless we think the cases cited above lead to the conclusion that the doctrine of assumption of the risk has no place in general federal maritime law." And see the Palermo and Mahnich cases previously cited.

2. In Sieracki the Court said that the liability "is neither limited by conceptions of negligence nor contractual in character. * * * It is a form of absolute duty owing to all within the range of its humanitarian policy." 328 U.S. at pp. 94–95, 66 S.Ct. at p. 877.)