Robert **REINHART**, Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 25039.

United States Court of Appeals,
Ninth Circuit.

March 13, 1972.

Lawrence Drasin (argued), of Kessler & Drasin, Los Angeles, Cal., for plaintiff-appellant.

Michael Dempsey (argued), William H. Brainerd, of Lillick, McHose, Wheat, Adams & Charles, William D. Keller, U. S. Atty., Los Angeles, Cal., Lawrence F. Ledebur, Chief, Admiralty & Shipping Section, Washington, D. C., for defendant-appellee.

Before TRASK and CHOY, Circuit Judges, and BATTIN,* District Judge.

TRASK, *Circuit Judge:*

Robert Reinhart appeals from a judgment in favor of the United States in an action brought by Reinhart for personal injuries sustained by him at sea while employed as a seaman on a vessel owned by the United States. The district court had jurisdiction under the Suits in Admiralty Act, 46 U.S.C. § 742, the Public Vessels Act, 46 U.S.C. § 781, the Jones Act, 46 U.S.C. § 688, and general maritime law.[1] This court has jurisdiction under 28 U.S.C. § 1291.

Reinhart was employed as Chief Mate on the S.S. Queens Victory, which trans-

---

* Honorable James F. Battin, United States District Judge for the District of Montana, sitting by designation.

1. In the prosecution of this appeal, Reinhart relies only upon general maritime law.

ported ammunition to Vietnam. Before the ship departed the United States, longshoremen installed wooden sheathing in its holds to prevent contact between the bombs and the vessel's metal hull. Since his duties as Chief Mate included overseeing safe working conditions on the vessel, Reinhart inspected the sheathing that was laid in each hold and accepted it as suitable for the intended cargo.

During unloading at Cam Rhan Bay by military crews using mechanical equipment, portions of the wooden sheathing were broken and gouged, especially along the sides of the ship. Rough treatment of the sheathing was expected, and it was customarily inspected and repaired after each voyage to Vietnam by longshoremen on the West Coast. The Queens Victory did not carry lumber aboard to repair the sheathing, and her carpenters had no duties regarding sheathing repair while at sea.

Immediately following the completion of the discharge operation in Vietnam, Reinhart had gone down into the lower portion of Hold Number 5 to supervise its cleaning. He also went into the hold on a sanitary inspection before the ship left Vietnam. During the return voyage, Reinhart was responsible for setting and inspecting rat traps which Government regulations required be placed in the empty holds. He and a carpenter descended into the holds to set the traps, but thereafter Reinhart alone entered the holds. Reinhart knew that some sheathing was broken and damaged.

After five or six inspections without incident, Reinhart descended into Hold Number 5 on August 23, 1968, to look for rats. The sole lighting in the hold was supplied by a single cluster of lightbulbs of 250 watts at the forward end of the hold. Reinhart had a flashlight which he played only on the sides of the hold looking for rats, and not on the sheathing on which he was walking. He fell through a hole in the flooring sheathing approximately twelve to fourteen inches long and eight inches wide, sustaining a hernia. He was declared unfit for duty, and underwent surgery. Maintenance and cure has been provided.

Reinhart then sued the United States, the shipowner, to recover his lost wages and other damages. He alleged that the vessel was unseaworthy because the United States had failed to maintain it and Hold Number 5 as a safe and adequate place to work.

■■ General maritime law imposes an absolute duty upon a shipowner to provide a vessel that is seaworthy. Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922); The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). This warranty of seaworthiness does not mean that the vessel is guaranteed to weather all storms or that it is accident-proof. It does mean that the vessel, together with its gear and complement of personnel, are reasonably fit to complete the intended voyage. Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955). It also requires that the ship be reasonably fit to enable the crew to perform their duties with reasonable safety. Ross v. The S. S. Zeeland, 240 F.2d 820, 822 (5th Cir. 1957).

■ Liability resulting from a failure to provide a seaworthy ship does not depend upon the negligence of the owner. The duty is absolute and thus creates a variety of liability without fault. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed. 2d 941 (1960). It is completely independent of any duty to exercise reasonable care under the Jones Act. Id. "What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence." Id. at 550, 80 S.Ct. 926, at 933. Likewise, neither contributory negligence nor voluntary assumption of risk is a defense, but may be taken into account in mitigation of damages. Socony-Vacuum Co. v. Smith, 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265 (1939); The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586 (1890).

No issue is joined on appeal with respect to seaworthiness. The district

court entered judgment for the United States on the ground that the appellant was barred from recovery under his theory of seaworthiness. The court concluded that: (1) as Chief Mate, Reinhart was himself directly responsible for maintaining the vessel's seaworthiness, including the safety of the sheathing on which he walked; (2) he had failed to fulfill his responsibility; and (3) this breach of his contractual duty to the shipowner caused his injury and barred his recovery under the theory of seaworthiness.[2] This appeal is presented on that issue.

The district court cited and relied upon Walker v. Lykes Bros. S.S. Co., 193 F.2d 772 (2d Cir. 1952). Walker was the Master of the ship and sued the owner under the Jones Act for injury to his shin when a roll of the ship caused a drawer of a steel filing cabinet in his office to open into him unexpectedly. Walker knew that the catches on the drawers had become defective and had had ample opportunity to have them fixed before the ship left port, but failed to do so. The owner argued that the Master of the ship had the duty to make the ship safe for the voyage and could not recover damages for his own breach of that duty.

Judge Learned Hand agreed. He distinguished between a momentary failure to exercise due care, which characterizes contributory negligence, and the failure to perform a positive duty which the injured party has knowingly and advisedly entered into with his employer. This latter type of failure had proximately caused Walker's own injury, for which he nonetheless sought to recover damages against his employer.

"The important thing in situations like that at bar is to distinguish between such a duty, which the law imposes upon the injured person, regardless of any conscious assumption of a duty towards the wrongdoer ['a duty not to expose himself to the chance that the wrongdoer may himself be delinquent . . . . '], and a duty which the injured person has consciously assumed as a term of his employment. By 'contributory negligence' which results in no more than reducing the amount of employee's recovery, the Act means the first; the second is a bar to any recovery." Walker v. Lykes Bros. S. S. Co., *supra* at 773.

Judge Hand's rationale was followed in Dixon v. United States, 219 F.2d 10 (2d Cir. 1955).[3] In that case, three rungs of a ladder in Hatch Number 2 were broken while the ship was discharging cargo. Dixon, the Chief Officer of the vessel, learned of the mishap and reported it to the Master; repairs were ordered at once. After the repairs were supposed to have been made, the Master ordered Dixon to inspect the ladder, and he was injured while doing so. The district court gave judgment for the libelant and the circuit court remanded for further findings. During

2. "5. Plaintiff failed to fulfill his responsibilities as the vessel's safety officer and specifically failed to properly inspect the sheathing where his accident occurred. If he had properly performed an inspection and corrected the condition, as it was his duty to do, no accident would have occurred. The Chief Officer's faults in these respects constitute a breach of his contractual duty to defendant to properly perform his duties, and bar him from any recovery under the theory of unseaworthiness. See Walker v. Lykes Bros. S.S. Co., 193 F.2d 772 (2d Cir. 1952)." C. T. at 40.

3. Other cases which have applied the rule of Walker v. Lykes are Cooke v. The M/V Wasaborg, 189 F.Supp. 464 (D.Ore. 1960); Elliott v. Jones & Laughlin Steel Corp., 166 F.Supp. 731 (W.D.Pa.1957), aff'd mem., 259 F.2d 959 (3d Cir. 1958); Mason v. Lynch Bros. Co., 131 F.Supp. 255 (E.D.Va.1955). Still other cases have followed a natural corollary of the *Walker* rule, holding that one may not recover on the basis of unseaworthiness for an injury entirely caused by one's negligence, although there may not have been a contractual duty. Schlichter v. Port Arthur Towing Co., 288 F.2d 801 (5th Cir. 1961); Williams v. The S.S. Richard Larrignaga, 287 F.2d 732 (4th Cir. 1961); Donovan v. Esso Shipping Co., 259 F.2d 65 (3d Cir. 1968).

the course of a carefully written opinion (prior to Mitchell v. Trawler Racer, Inc., *supra*), then Circuit Judge John M. Harlan distinguished Walker v. Lykes:

> "Cases such as Walker v. Lykes Bros. S. S. Co., 2 Cir., 1952, 193 F.2d 772; Great Northern Railway Company v. Wiles, 1916, 240 U.S. 444, 36 S. Ct. 406, 60 L.Ed. 732, and other cases of the same tenor which the appellant cites, are in no way inconsistent with the rule that assumption of risk is not a defense or comparable to the situation before us. Those cases are only instances of the *firmly established rule that an employee may not recover against his employer for injuries occasioned by his own neglect of some independent duty arising out of the employer-employee relationship.* Their result turns really not upon any question of 'proximate cause,' 'assumption of risk' or 'contributory negligence,' *but rather upon the employer's independent right to recover against the employee for the non-performance of a duty resulting in damage to the employer, which in effect offsets the employee's right to recover against the employer for failure to provide a safe place to work.* Such cases are quite inapposite here. Dixon was not guilty of any breach of duty to his employer." 219 F.2d at 16–17.

◼ In *Dixon*, like the present case, the Chief Officer had become aware of the disrepair, but Dixon had reported it and taken steps to have it fixed before the vessel again put to sea. Reinhart, on the other hand, took no steps to patch up the damage before the ship left Vietnam or to provide adequate lighting, which the court found could have been done; he made no effort to see that the area was safe for the limited purposes for which it was to be used during the return voyage. The trial court concluded as a matter of law that if the Chief Officer had properly performed his inspection duties and corrected the un-

safe condition, no accident would have occurred. His failure to do so constituted a breach of his contractual duty to the defendant.

Appellant calls our attention to Boat Dagny v. Todd, 224 F.2d 208 (1st Cir. 1955), as a case which correctly analyzes Walker v. Lykes as simply distinguishing the legal consequences between two types of contributory negligence. All of this, it is argued, has been "swept into discard" by the 1939 amendment of the Federal Employers' Liability Act, and the decision of the Supreme Court in Tiller v. Atlantic Coast Line R. R., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943). Boat Dagny v. Todd, *supra* at 211.

We cannot accept such an over-simplified explanation of Walker v. Lykes. That case was decided in 1952, long after the Federal Employers' Liability Act amendment and the decision in *Tiller*. It seems naive to assume that neither Judge Hand nor his associates, Chief Judge Swan and Judge Augustus Hand, were aware of either the statute or the decision.

We do not believe Walker v. Lykes stands for a distinction between two types of contributory negligence or assumption of risk. On the contrary, we are more persuaded by Judge Harlan's above-quoted analysis of Walker v. Lykes in Dixon v. United States, 219 F.2d 10, 16–17 (1955).[4] He correctly points out that the rule of *Walker* is "in no way inconsistent with the rule that assumption of risk is not a defense . . .", and that the result in *Walker* does not turn on any question of assumption of risk or contributory negligence.

We have also considered Hudson Waterways Corp. v. Schneider, 365 F.2d 1012 (9th Cir. 1966). There, the libelant, a Third Assistant Engineer, was ordered by the First Assistant Engineer to get a standby air compressor operating. While undertaking to do so, he received severe electrical shocks because of

---

4. *Dixon*, incidentally, was argued and decided while both Judge Learned Hand and Judge Swan were still on the court as Retired Circuit Judges.

the disrepair of the switch box. He claimed damages under the Jones Act and under general maritime law. The trial court found both unseaworthiness and negligence on the part of the ship owner. In affirming, we reiterated the basic rules announced in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S. Ct. 926, 4 L.Ed.2d 941 (1960), noted in this opinion.

The appellant argued that Walker v. Lykes barred recovery. Quite correctly and consistently with *Walker*, we held that the rule of that case did not apply because there was no proof that libelant, as Third Assistant Engineer, had the duty and responsibility to maintain the electrical system, including the switch box, in repair. That was the duty of the First Engineer and Schneider had an absolute right to recover damages mitigated only by what negligence could be ascribed to his own actions. He assumed no duty which barred his recovery, the duty and negligence of the officer primarily responsible could not be delegated to Schneider and the rule of *Walker* did not apply.

In Hudson Waterways Corp. v. Schneider, *supra* at 1016 n. 1, we indicated a "serious question" as to the application of the rule of Walker v. Lykes in a case of that kind. We agree with both the caveat and the distinction which the *Hudson Waterways* court drew, based upon *Walker* itself and its elucidation in *Dixon*. It is not necessary to respond here in detail to the remaining comments of that note.[5]

The district court also found as facts that Reinhart was 75% "contributorily negligent" even if his breach of duty to inspect and repair did not bar his recovery, that the damages he had sustained totalled $8,000, and that such damages should be reduced by 75% in the event he was held entitled to compensation on

appeal. Having disposed of this appeal on the basis of *Walker*, it is not necessary to consider the trial court's alternate theory of comparative negligence.

The judgment is affirmed.

CHOY, Circuit Judge (dissenting):

I respectfully dissent.

The district court clearly erred in finding that Reinhart, as chief mate, knew that holes had been broken in the decking sheathing into one of which he fell and that he had the duty to inspect and correct damaged sheathing in the holds on the homeward voyage of the vessel. The government produced no evidence on that issue, although it could have. The only witness in the entire trial was Reinhart, the appellant, and his testimony was uncontradicted and accepted by the district court, but obviously misinterpreted.

That testimony was that "The chief mate's job is to make sure that the cargo is stowed properly on the vessel and also the maintenance of the gear for the vessel to work cargo, and also the upkeep of the outside of the vessel, all painting, any repair work that has to do with the ship itself;"[1] that it was the duty of the longshoremen at the home port to sheath the hatch and to renew and repair the sheathing when the ship returned to port;[2] that he and the ship's carpenters had no duty with reference to maintenance of the holds on the way back from Vietnam[3]—in fact, the vessel did not carry lumber aboard to work on sheathing;[4] that his only duty as to the holds was to see that they were clean and to set rat traps there and to tend the traps;[5] that while it was not unusual for sheathing on the bulkhead to get broken up from carrying ammunition, it was unusual for holes to appear in the decking sheathing because five-by-ten foot plates were laid over the deck-

5. *See generally* Dunbar v. Henry DuBois' Sons Co., 275 F.2d 304, 306 n. 1. (2d Cir. 1960).

1. R.T. 12.

2. R.T. 13, 15, 27.

3. R.T. 15, 16.

4. R.T. 33.

5. R.T. 26, 36.

ing before equipment ran over it; [6] that he had not seen the hole in the decking sheathing at any time before he fell into it; [7] and that as chief mate he was head of the deck department (not the holds), second in responsibility only to the captain to make sure that working conditions in the deck department were safe for the crew to work there.[8]

The district court concluded that Reinhart was the safety officer for the entire ship, including the holds and the sheathing therein, when the sole evidence in point expressly negated that conclusion. This being so, the "primary duty" bar of Walker v. Lykes Bros. S. S. Co., 193 F.2d 772 (2nd Cir. 1952) is inapplicable to Reinhart. Not only was he not the one primarily responsible for safe working conditions in the deck department—the captain was; but also, he was not at all responsible for the maintenance and repair of the sheathing in the holds—the home port stevedores were.

Accordingly, all of the authorities cited and discussed by my Brothers in the majority opinion, which impose an absolute duty upon the shipowner to provide a seaworthy vessel, create a variety of liability without fault in the shipowner, and forbid any defense of contributory negligence or assumption of risk except in mitigation of damages, apply here with full force.

However, I would sustain the district court's findings that Reinhart was 75% "contributorily negligent" and that he had sustained damages totaling $8,000 which should be reduced by 75%, as not being clearly erroneous. He should not have entered the poorly-lit hold without augmenting its illumination with more cluster lights which could have been used, and he should have used his flashlight to view his path in the hold.

I would, accordingly, reverse the district court on the issue of liability and remand for assessment of mitigated damages on the doctrine of comparative negligence.

6. R.T. 29–30.

7. R.T. 17–18, 71.

8. R.T. 31, 34.