**John R. BUCKNER**

v.

**STATE BOAT OPERATORS, INC., et al.**

**Civ. A. No. 86–898.**

United States District Court, E.D. Louisiana.

March 4, 1988.

Frank E. Lamothe, III, New Orleans, La., Ron S. Macaluso, Hammond, La., for plaintiff.

Michael J. Maginnis, New Orleans, La., for defendant.

BEER, District Judge.

This matter is before the court on motion by defendant, State Boat Operators, Inc. (SBO), seeking summary judgment on the Jones Act negligence claim of the plaintiff, John R. Buckner.

On August 20, 1984, Buckner reported to the offices of SBO for vessel assignment. He was advised by SBO that he was assigned to the M/V STATE PROGRESS as its captain. The STATE PROGRESS was berthed nearby alongside another vessel. In order for Buckner to board STATE PROGRESS, he had to step down between the two boats, a distance of approximately five feet. No gangplank or other boarding device connected the two vessels. Buckner, knowing that such access was probably available upon request from SBO, nevertheless boarded the STATE PROGRESS by jumping down those five feet from the deck of the adjacent boat. Upon landing, plaintiff injured himself.

SBO asserts that they were not in any way negligent and are entitled, as a matter of law, to summary judgment dismissing Buckner's claim. SBO contends that as Buckner was assigned to the STATE PROGRESS as its captain, and entrusted with its care and management, his failure to request a gangplank prior to boarding amounted to a breach of those aforementioned duties owed to SBO. Thus, the defendant alleges that the missing gangplank was a condition due wholly and solely to the plaintiff's fault in not carrying out his responsibilities, and therefore, should preclude him from any recovery.

Buckner, on the other hand, asserts that the vessel owner, SBO, owes its captain the non-delegable duty of providing the vessel with a reasonably safe means of ingress. He further contends that SBO has the duty to inspect the onboard arrangements, and that when such an inspection reveals or should reveal an unreasonable risk of harm

to the captain, the vessel owner has the duty to remedy the situation by taking reasonable precautions.

■ *Walker v. Lykes Bros.*, 193 F.2d 772 (2d Cir.1952) involved a boat captain who was injured at sea by a piece of equipment (known by him to be defective) located in the cabin of the vessel. Though he attempted to have the equipment (a desk drawer with broken catches) repaired while the vessel was in port, pursuant to oral and written requests by him, he failed to make any effort to enforce obedience and compliance to those repair requests. Later, while at sea, he was injured by that particular piece of defective equipment. In a suit for damages by the captain, the court distinguished between two types of duties: (1) the duty imposed upon the injured person regardless of any conscious assumption of a duty towards the wrongdoer, and (2) the duty which the injured person has consciously assumed as a term of his employment. *Walker*, finding that the latter distinguished duty was applicable in its case, held that where a plaintiff vessel master failed to make repairs, though able to do so, his failure will not only be contributory negligence (which is incorporated in the first of the aforementioned duties), but also a breach of his contractural duty (incorporated by the second duty standard) to his defendant-employer which, in such an instance, absolutely bars recovery.

*Reinhart v. United States*, 457 F.2d 151 (9th Cir.1972) and *Peymann v. Perini Corp.*, 507 F.2d 1318 (1st Cir.1974) are two cases which mirror the reasoning of *Walker*. In *Reinhart*, a Chief Mate on a cargo vessel at sea, entrusted with the duty of overseeing safe working conditions on the vessel, was injured while inspecting a cargo hold. Failing to shine his flashlight where he was walking, he fell through some broken deck sheathing. The court held that because he failed to adequately perform his related duties to correct the unsafe condition of the broken sheathing, and see to it that the cargo hold was properly lighted, he was denied recovery. His actions were deemed to have constituted a breach of his contractural duty to the defendant.

In *Peymann*, a Chief Engineer needed to make some repairs which necessitated the use of a ladder. Though one was available, he decided against its use and was injured. Though the court held that it was not proper to hold the vessel responsible to any degree, it is significant to note that the Chief Engineer admitted to the defendant-shipowner that it was his duty to get the ladder, when and if one was available, so as to maintain proper working conditions in the engine room.

It is important to note that in both *Walker* and *Reinhart*, the shipwoner had no knowledge of the defect which caused the injury. Whether or not SBO knew that the gangplank was needed and was missing is not clear. The trier of fact must determine if SBO had knowledge of the absent gangplank and a need for same to be in place. A *Walker–Reinhart* application would require that Buckner consciously assumed a contractural and independent duty of ensuring that there was safe ingress to the STATE PROGRESS. This must be resolved by the trier of facts.

The Fifth Circuit does not appear to have subscribed to a *Walker–Reinhart* analysis in Jones Act claims alleging negligence in the maintenance of safe ingress to a vessel. In a FELA (Federal Employers Liability Act) case, that court discussed the non-delegable duty to provide employees with a safe place to work. See: *Kendrick v. Illinois Central Gulf Railroad Co.*, 669 F.2d 341 (5th Cir.1982).

■ The duty to provide a seaworthy vessel includes the providing of an acceptable method for safely boarding and departing the vessel. *Hebert v. Otto Candies*, 402 F.Supp. 503 (E.D.La.1975). In *Hebert*, a boat captain tied up his crewboat to a deck barge. This resulted in a three foot distance in draft between the two structures. While traversing a narrow walkway that connected the barge to the crewboat, the captain fell into the water and drowned. In determining whether or not negligence played any part, even the slightest, in causing the fall of the captain,

the court held that the boat rental company owed the plaintiff a safe means of ingress and egress between the two craft. Failure to provide such a safe method for boarding and departing the crewboat was found to be an act of negligence on the part of the boat rental company.

 The duty owed by an employer to a seaman is sufficiently broad as to encompass the duty to provide a safe place to work. *Spinks v. Chevron Oil,* 507 F.2d 216 (5th Cir.1975). By comparison, the seaman's duty to protect himself is slight, as his duty is to do the work assigned and not to find the safest method of work. *Id. Rivers v. Schlumberger Well Surveying Corp.,* 389 So.2d 807 (La.App. 3rd Cir.1980) addressed the issue of a plaintiff's alleged negligence in attempting to traverse an unsafe area which was in that instance a soft and unstable levee that abutted the gangplank of a boat. *Rivers,* citing with approval the *Spinks* language that absolves a seaman of finding the safest method to work, held that any negligence of a seaman which causes his injuries, is subject to the law of comparative negligence.

Since the Fifth Circuit and this District have stated that the duty to maintain a safe work environment and ensure safe ingress-egress on vessels employing seaman is a *non-delegable duty* owed by the shipowner to the seaman, no "contractual" or "independent" duty should be impliedly assumed.

Here mover bears the burden of demonstrating that there is no actual dispute as to any material fact in this case. Where, as here, there have been presented facts and case law which allow for the reasonable inference that negligence on the part of the employer, SBO, could be a causal link to Buckner's injury, the matter must be submitted to the trier of fact. Defendant's motion for summary judgment must be DENIED.