607 So.2d 760 (1992)
Bruce J. COLLINS, Jr. and Earline D. Collins
v.
TEXACO, INC. and Cigna Property and Casualty Insurance Company.
No. CA911181.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
*762 William S. Watkins, Houma, for appellee and plaintiffs, Bruce J. Collins and Earline D. Collins.
Edward F. Kohnke, New Orleans, for defendant and appellant, Texaco, Inc. and Cigna Property and Cas. Ins. Co.
David Faure, New Orleans, for defendant-appellant Texaco.
Before CARTER, LANIER and LeBLANC, JJ.
*763 LeBLANC, Judge.
Bruce Collins sustained back injuries on October 6, 1988, while serving as relief captain and sole crew member of the M/V MR. BABIN. Collins and his wife, Earline, brought this suit under the Saving to Suitors Clause (28 U.S.C. 1333), alleging causes of action under the Jones Act (46 U.S.C.App. 688) and general maritime law. Original defendants were Texaco, Inc. and the Insurance Company of North America (erroneously identified as CIGNA Property and Casualty Insurance Company in the petition). Plaintiffs later amended their petition to add Wilbert J. Babin, d/b/a Babin's Boat Rentals, co-owner of the crewboat which operated pursuant to a contract with Texaco.
Following a bench trial on October 22, 1990, the court found defendants Texaco and CIGNA solidarily liable for the plaintiffs' damages.[1] Texaco and INA appeal this judgment, urging six assignments of error. Mr. and Mrs. Collins answered the appeal, seeking an increase in damages. For the reasons expressed, we affirm all aspects of the judgment except the award for loss of consortium and certain expert witness fees which are reversed and remand for the trial court to properly name the defendant insurer in the judgment.

FACTS
Bruce Collins, aged 34 at the time of the accident in October 1988, is a shrimp trawler and unlicensed boat captain whose formal education ended in the eighth grade.
Wilbert Babin is Collins' uncle and godfather. Babin's crewboat had been working under contract with Texaco in the Lake Barre field in Terrebonne Parish for 20 years. In May 1988, Babin hired Collins to work a seven-day shift alternating with another captain, Charlie Broussard, while Babin recuperated from surgery. After Babin recovered, Broussard was laid off and Babin rotated shifts with Collins himself. Collins testified he hoped to keep the job as long as his uncle had the Texaco contract.
Collins was paid $90 per day plus meals and lodging, less state and federal taxes and social security. While operating the boat, it was Collins' job to transport Texaco employees and their equipment to various wells or platforms accessible only by boat.
On October 6, 1988, Collins took Texaco employees Donald Blanchard and Gene Loe to a platform in the Lake Barre field. While moored there, Collins decided to check the oil in the engine room below. The engine room is accessed by two aluminum hatches, each measuring approximately six by three feet. When the hatches are open and in good working order, they are secured by a latch, held in place by a nut and bolt, which creates a slide mechanism. Neither of the latches was working properly on the day of the accident, however. Collins therefore propped the hatch cover open by placing the latch in the gully around the hatch opening; he testified that Babin and Charlie Broussard had shown him how to do this. When he ascended from the engine room to the deck, the hatch cover fell and struck him in the back.
Collins' ensuing disc problems were treated conservatively for several months. Then, in January 1989, Dr. Richard Landry performed a lumbar laminectomy to remove the affected disc. As Collins continued to experience pain after this surgery, Dr. Landry performed a spinal fusion in June 1989. Dr. Landry testified that Collins had achieved maximum medical improvement as of October 1990, and that he might return to work subject to various restrictions.
Collins testified that he felt better after the second surgery, but that he continued to suffer "steady pain." He stated that he can no longer trawl, hunt, or play with his children. He and his wife both testified that their relationship had been strained by his injury. Collins further stated that he suffered from depression and was in therapy *764 with a psychologist; the psychologist testified that Collins' depression was "clinically significant." At the time of trial, Collins had not worked since October 1988.
Two reports prepared by vocational rehabilitation consultants were filed into evidence. One submitted that Collins might eventually find employment as a captain on inland waterways if he took and passed the licensing exam. Compensation for these jobs ranged from $100.00 to $145.00 per day. Several non-maritime jobs purportedly consistent with Collins' medical restrictions were also suggested; these jobs paid between $3.80 and $8.00 per hour.
In written reasons for judgment, the trial court found that, on the day of the accident, the latch could "no longer be used in the manner in which it was designed to be used" and was therefore "in a defective condition rendering it unsafe." The court found that Collins was "forced" to place the latch into the gully on the side of the opening to prop the hatch open and concluded that the "unseaworthy condition of the hatch ... caused it to fall on Mr. Collins and cause his injuries."
The court further found that, because of Collins' limited education and the physical nature of his previous work experience, it would be difficult to place him in a job "without considerable vocational rehabilitation." The court awarded Collins $120,000.00 for physical and mental pain and suffering, and past and future disability and impairment, $29,600.00 for past lost earnings and $72,600.00 for future lost earnings. Mrs. Collins was awarded $5,000.00 for loss of consortium, love, affection, society and support. Expert witness fees were fixed, taxed as costs and ordered paid to four individuals. The judgment, signed March 19, 1991, stipulated that prejudgment interest of 11.5% would apply to the $95,000.00 general damage award and to the $29,600.00 awarded for past earnings from the date of accident. Postjudgment interest at the same rate would apply to the entire amount of $222,200.00.

DISCUSSION
LIABILITY
Collins relied on two distinct federal remedies: the unseaworthiness doctrine of general maritime law and the Jones Act.
According to the unseaworthiness doctrine, vessel owners owe to seamen the duty to provide a seaworthy vessel and are liable for any breach of this warranty implied in the contract of employment which may cause injury to the seaman. The duty does not depend on the exercise of reasonable care, negligence, notice of the condition or opportunity to correct the condition. To be seaworthy, the ship, including its crew and appurtenances, must be reasonably safe to use and to perform its assigned task. The standard is not absolute perfection, but reasonable fitness for the vessel's intended service. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).
It is uncontested that Collins' injuries were caused when the hatch fell on him. The testimony of Collins, Babin, Donald Blanchard, the Texaco employee who most frequently travelled aboard the M/V MR. BABIN, and David Cole, an expert in marine safety, supports the trial court's conclusion that the latch indeed could "no longer be used in the manner in which it was designed to be used." The trial court's finding that the "unseaworthy condition" of the hatch caused Collins' injuries is supported by the record.
A seaman can recover damages under the Jones Act if his injury was caused by the negligence of his employer or his fellow employees. 46 U.S.C.App. § 688. A Jones Act employer may be held liable if its negligence played a part, however slight, in causing an injury. Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir.), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988) and citations therein. Under the Jones Act, the employer must have notice and opportunity to correct any unsafe condition. Colburn v. Bunge Towing, Inc., 883 F.2d 372 (5th Cir.1989).
*765 In its reasons for judgment, the trial court stated that a "[p]laintiff has a right of recovery under the Jones Act if this Court finds that the vessel was unseaworthy." Appellants correctly observe that a claim of unseaworthiness and a Jones Act claim are two distinct causes of action. Appellants conclude that the court found no liability against any of the defendants under the Jones Act.
Appellees urge, however, that a finding of Jones Act negligence was implicit in the court's ruling. We agree. The standard required to prove causation as a result of a vessel's unseaworthiness is more demanding than that for recovery under Jones Act negligence in that it requires proof of causation in the traditional sense. Landry v. Oceanic Contractors, Inc., 731 F.2d 299, 302 (5th Cir.1984) (emphasis in original).
In the instant case, the unseaworthy condition found by the trial court was the defective latch; the court unequivocally found that this condition was the cause of Collins' injuries. Further, the record supports a finding that Collins' employer had both notice of the defect and opportunity to correct it. Collins and Babin both testified that the starboard hatch was broken when Collins first reported for work on the boat. Collins stated that he found the port hatch broken when he came on board for his second seven-day shift; he reported the problem to Babin on numerous occasions and to Texaco's welder who told him he could fix the latch only on Babin's request. At trial, Babin remembered having the starboard hatch fixed after Collins' accident, but could not recall the condition of the port hatch at the time of the accident or whether it had been fixed afterward. However, he admitted stating in deposition that, after the latch was broken, he had continued to prop open the hatch by simply placing the latch in the gully: "[I]t worked just as goodI really didn't see no reason to fix it." He admitted the port latch should have been fixed sooner. Donald Blanchard testified that he had seen captains other than Collins secure the hatch in this make-shift fashion for some time prior to Collins' accident. We find that the evidence presented is more than sufficient to establish the "slight" negligence required to find liability under the Jones Act and that such a finding is indeed implicit in the court's ruling.
In two assignments, appellants urge that Collins is nevertheless barred from recovery under the Jones Act or general maritime law because the unseaworthy condition which caused his injury was the result of his own negligence or his breach of a duty owed his employer.
One of the defense theories on which appellants rely is the "primary duty doctrine," which provides that when a seaman is injured due to a breach of a duty he has consciously assumed as a term of his employment, he is barred from recovery under the Jones Act or a general maritime unseaworthiness claim. Walker v. Lykes Bros. Steamship Co., 193 F.2d 772 (2d Cir.1952); Reinhart v. United States, 457 F.2d 151 (9th Cir.1972). Appellants claim that Collins owed Babin an independent, primary duty to maintain the M/V MR. BABIN and breached this duty by failing to repair the latch.
Appellees question the continued viability of the primary duty doctrine, citing Boat Dagny, Inc. v. Todd, 224 F.2d 208 (1st Cir.1955) and Louisiana & Arkansas Railway Co. v. Johnson, 214 F.2d 290 (5th Cir.), cert. denied, 348 U.S. 875, 75 S.Ct. 111, 99 L.Ed. 688 (1954), which reject the Walker court's distinction between breach of a primary employment duty, which acts as a complete bar to recovery, and contributory negligence, which serves merely to reduce recovery. They further note that, in a number of the cases cited by appellants, recovery was barred, not because of a breached employment duty, but because the plaintiff was found to be solely responsible, or 100% contributorily negligent, for the condition which caused his injury or death. See, e.g. Schlichter v. Port Arthur Towing Co., 288 F.2d 801 (5th Cir.), cert. denied, 368 U.S. 828, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961); Keel v. Greenville Mid-Stream Service, Inc. and M/V Ark City, 321 F.2d 903 (5th Cir.1963). Nevertheless, in considering *766 whether a seaman was under a contractual duty to his employer to attempt the rescue of another seaman who had fallen off a different vessel, the Fifth Circuit has stated that:
[w]here the seaman claiming a breach of the owner's warranty of seaworthiness himself is directly responsible to the owner for maintaining the vessel's seaworthiness, the jury has been held to be entitled to consider whether that fact should bar recovery.
Hlodan v. Ohio Barge Line, Inc., 611 F.2d 71, 74 (5th Cir.1980).
In the instant case, the trial court, as trier of fact, was thus entitled to determine whether the evidence established that Collins was responsible for repairing the latch and, if so, if his failure to do so should bar his recovery.
It is undisputed that appellants are contractually bound to defend and indemnify Babin and that Babin was responsible under the contract for "minor repairs, maintenance and replacements on the job as necessary in order to keep the boat in a good working and seaworthy condition." Babin testified that it was the captain's responsibility to keep the boat clean and that the captain "could" make repairs if he was on the boat when the need arose. Nothing in the record, however, supports the conclusion that Collins understood the terms of his employment to include all repairs to the boat. Indeed, Babin testified that Texaco employees would occasionally perform repairs on the boat with the field supervisor's approval. Collins testified at trial that he reported the problems with the latch to Texaco's welder, who refused to repair the latch unless Babin himself requested it. Donald Blanchard's testimony established that the latch had been broken for several seven-day "hitches" prior to the accident; because Babin and Collins rotated shifts or "hitches," Collins was thus not the only captain who knew the latch was broken.
The trier of fact could conclude from this evidence that Collins did not "consciously" assume responsibility, under the terms of his employment, for the type of repair work required in this instance and thus had no "primary duty" to undertake the repairs. See Walker, supra; Buckner v. State Boat Operators, Inc., 680 F.Supp. 239 (E.D.La.1988). We thus find no error in the trial court's failure to bar Collins' recovery based on the primary duty doctrine. This assignment is without merit.
In a similar vein, appellants urge that the trial court erred in finding the M/V MR. BABIN unseaworthy when the unseaworthy condition was created solely by Collins' own negligence and breach of employment duty. They cite Peymann v. Perini Corp., 507 F.2d 1318 (1st Cir.1974), cert. denied, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975), which reasoned that a "strict reading" of Walker teaches that "a seaman may not recover where his breach of duty constitutes the sole cause of injury." Id. at 1323. However, we have previously concluded that the record evidence firmly establishes Babin's negligence. The trial court could not find on this record that Collins' conduct was the "sole" cause of his injury. This assignment lacks merit.
Appellants' third assignment challenges the trial court's failure to find Collins contributorily negligent and reduce his recovery accordingly. In both Jones Act and unseaworthiness actions, the defendant has the burden of proving that the plaintiff was contributorily negligent and that such negligence was the proximate cause in producing the injury. Miles v. Melrose, 882 F.2d 976, 984 (5th Cir.1989), aff'd on other grounds sub nom. Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). A Jones Act plaintiff's duty to protect himself is "only a slight duty to use reasonable care." Pickle v. International Oilfield Divers, Inc., 791 F.2d 1237, 1240 (5th Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987) and citations therein.
Appellants nevertheless argue that Collins' failure to repair the latch constituted unreasonable care and a breach of his "slight" duty to protect himself. We disagree. Babin testified that the motion of the boat often caused the nut and bolt to *767 loosen and eventually fall into the bilge; he was "pretty sure" Collins could have repaired the broken latch simply by getting replacements from the Texaco meter shed. Collins, however, testified that a new nut and bolt would not have solved the problem because the "lip" of the latch had worn out and broken off; there was nothing to support a new nut and bolt. David Cole, the marine safety expert, corroborated this assessment. The trial court could have concluded that Collins was unable to repair the latch on his own and that he acted reasonably in reporting the problem to Babin.
Furthermore, Collins' knowledge that the latch was unsafe, alone, is insufficient to render him contributorily negligent. To establish contributory negligence in a maritime setting there must be evidence of a negligent act or omission by plaintiff other than his knowledgeable acceptance of a dangerous condition. Furka v. Great Lakes Dredge & Dock Co., Inc., 755 F.2d 1085, 1090 (4th Cir.), cert. denied, 474 U.S. 846, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985). See also Griffin v. LeCompte, 471 So.2d 1382, 1388 (La.1985). We do not believe Collins' "failure" to repair the latch mandates a finding of contributory negligence.
Nor are we persuaded that Collins was contributorily negligent because he could have used alternative means to secure the hatch. A seaman generally has no duty to find the safest way to perform his work; rather, the duty to provide for a safe course of conduct lies primarily with the vessel owner. Johnson v. Offshore Exp., Inc., supra, 845 F.2d at 1355. Collins testified that Babin and Charlie Broussard, the other relief captain, showed him how to secure the hatch by placing the latch in the gully. Babin himself testified that he saw no particular reason to get the latch fixed since this method "worked just as good." While it is true that alternative methods of securing the hatch existed, we cannot conclude that the trial court erred in failing to find Collins contributorily negligent when he did nothing more than follow the instruction and example of his employer.
In a judge trial of an admiralty claim, the question of contributory fault is treated as a fact question, the finding of which should not be overturned on review unless clearly erroneous. Kratzer v. Capital Marine Supply, Inc., 645 F.2d 477 (5th Cir.1981). See also Danos v. McDermott, Inc., 563 So.2d 968 (La.App. 1st Cir.1990). Under the particular facts of this case, and given both the seaman's slight duty to protect himself and the fact that the burden of proving contributory negligence lies with the defendant, we cannot say that the trial court's result on this issue was clearly erroneous. We find no merit in this assignment.
DAMAGES
We first observe that, in their answer to this appeal filed July 12, 1991, appellees asked this court to modify the award for future lost wages from $72,600.00 to $150,000.00, and the general damage award from $120,000.00 to $200,000.00. However, in their brief filed October 14, 1991, appellees urge that "the evidence in the record amply supports the district court's award of damages for loss of future earnings." The general damage award is not addressed at all. We thus decline to consider appellees' challenge of either award. Uniform Rules for the Court of Appeal 2-124.
Loss of Consortium
By their fourth assignment, appellants claim that the trial court erred as a matter of law by awarding damages to Earline Collins for loss of consortium, love, affection, society and support. It is clear that no claim for loss of consortium and society exists under the Jones Act, which is construed to permit only pecuniary damages. Simeon v. T. Smith & Sons, Inc., 852 F.2d 1421, 1433 (5th Cir.1988). In Miles v. Apex Marine Corp., supra, the U.S. Supreme Court held that there is no recovery for loss of society in a general maritime claim for the wrongful death of a seaman. Relying on Miles, federal district courts in Louisiana have concluded that there is no cause of action for loss of consortium and society under the general maritime law where the seaman has sustained *768 a non-fatal injury. See, e.g. Melancon v. Petrostar Corp., 762 F.Supp. 1261 (W.D.La.1991); Cater v. Placid Oil Co., 760 F.Supp. 568 (E.D.La.1991); Breland v. Western Oceanic, Inc., 755 F.Supp. 718 (W.D.La.1991).
Appellees note that, strictly speaking, federal district court decisions are not binding on a Louisiana state court. Gaspard v. Transworld Drilling Co., 468 So.2d 692 (La.App. 3rd Cir.), writ denied, 474 So.2d 1304 (1985), cert. denied, 475 U.S. 1067, 106 S.Ct. 1382, 89 L.Ed.2d 607 (1986). Nevertheless, we find the federal cases cited persuasive and therefore reverse that portion of the trial court's judgment awarding damages to Earline Collins.[2]
Lost Earnings
Appellants' fifth assignment challenges as excessive the court's awards for past and future lost earnings.
At trial, economists' reports were filed into evidence by both appellants and appellees. Appellants' economist, Dr. Kenneth Boudreaux, estimated Collins' past lost earnings (from the accident on October 6, 1988 to trial on October 22, 1990), at $9,529.25. This total was based primarily on Collins' 1981-88 average annual income: $4,909.31. Dr. G. Randolph Rice, appellees' economist, proceeded on the assumption that, but for the accident, Collins would have continued to work for his uncle at the rate of $90 per day in seven-day shifts. Rice's calculations yielded after-tax wage losses of $33,021.00 from accident to trial.
In arriving at an award of $29,600.00, the trial court clearly gave greater weight to the methodology used by Dr. Rice. A trial judge's assessment of damages is considered a factual finding which, unless clearly erroneous, deserves deference on review. Masinter v. Tenneco Oil Co., 867 F.2d 892 (5th Cir.1989) and citations therein. We cannot say that the court's implicit rejection of Dr. Boudreaux's calculations was clearly erroneous, particularly since those calculations negate the effects of Collins' good fortune in finding a better paying job with his uncle some months before the accident.
Appellants also challenge the trial court's future lost earnings award of $72,600.00. Dr. Rice arrived at a figure of $116,297.00 on the assumption that Collins would return to work in the future, obtaining year-round employment paying the minimum wage, and retain such employment for the remainder of his work life. Dr. Boudreaux, on the other hand, concluded that Collins suffered no future income loss. Dr. Boudreaux's conclusion was apparently based partly on information derived from a vocational rehabilitation report which suggested that Collins might at some future time secure maritime employment at a compensation rate consistent with or greater than his earnings aboard the M/V MR. BABIN. The primary factor, however, appears to have been Dr. Boudreaux's conclusion that even minimum wage work would compensate Collins at a greater average annual income than he had enjoyed prior to the accident.
In its reasons for judgment, the court cited medical testimony to the effect that Collins could "possibly" return to work, with physical restrictions, and opined that Collins would find job placement difficult without "considerable vocational rehabilitation." Having previously found that the trial court's rejection of appellants' expert's estimates of past lost earnings was not clearly erroneous, we find no error in the court's refusal to credit those estimates in the context of future lost earnings. Nor do we find that the court erred in reaching a figure somewhat lower than that recommended by appellees' expert, as the court could legitimately credit evidence to the effect that Collins might, during the course of his worklife, secure employment at more than minimum wage. This assignment is without merit.
PREJUDGMENT INTEREST
Appellants' last assignment urges that the trial court abused its discretion in awarding prejudgment interest and by establishing a single prejudgment interest *769 rate of 11.5% rather than using the variable rates authorized by La.C.C. art. 2924 to fix a different rate for each year. In admiralty cases, prejudgment interest is not awarded as a penalty but as compensation for use of funds by the defendant to which the plaintiff is entitled; the court has broad discretion in setting these rates and may look to state law or other reasonable guideposts indicating a fair level of compensation. Todd Shipyards Corp. v. Auto Transportation, S.A., 763 F.2d 745 (5th Cir.1985). La.C.C. art. 2924 thus provides a guideline rather than a mandatory standard for calculation of prejudgment interest in a case, such as the instant one, which was governed by federal rather than state law. Myers v. Pennzoil Co., 889 F.2d 1457 (5th Cir.1989), cited by appellants, is thus distinguished. As the trial court's prejudgment interest award does not constitute an abuse of discretion, this assignment lacks merit.
EXPERT WITNESS FEES
In brief, appellants challenge expert witness fees of $250.00 each made to Randolph Rice and Cornelius Gorman. Appellants argue that these awards violate La.R.S. 13:3666, which provides for compensation of witnesses "called to testify in court[.]" Both of these experts presented written reports which were filed into evidence. Nevertheless, the Louisiana Supreme Court has stated that there exists no statute which "provides that the fee of an expert who is employed and paid by a litigant for work preparatory to trial, but who is not called to testify in the case, may be considered costs and taxed as such." State, Department of Highways v. Salemi, 249 La. 1078, 193 So.2d 252, 254 (1966). See also Trosclair v. Higgins, 216 So.2d 558, 562 (La.App. 4th Cir.1968). The portions of the judgment awarding these fees as costs are therefore reversed.

CONCLUSION
The portions of the trial court's judgment awarding damages to Earline Collins for loss of consortium, love, affection, society and support and awarding expert witness fees to Randolph Rice and Cornelius Gorman are reversed, as we find these awards are unsupported in law. The case is remanded for the limited purpose of allowing the trial court to correct the judgment so that the proper defendant insurer is named. All other aspects of the judgment are affirmed. Costs of this appeal are assessed against appellants, Texaco, Inc. and Insurance Company of North America.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] In brief, appellants state that while they "dispute the district court's liability findings on the issues of negligence and unseaworthiness, they have agreed to defend and indemnify Wilbert Babin, d/b/a Babin Boat Rentals, pursuant to a policy of insurance purchased by Babin" in conjunction with his Texaco contract. The signed judgment reflects this agreement.
[2] The trial court awarded postjudgment interest "on the entire amount of $222,200.00." We note that this "entire amount" apparently excluded the $5,000.00 award to Mrs. Collins.