STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 0869

DANE THOMAS

VERSUS

STATE OF LOUISIANA,
DEPARTMENT OF WILDLIFE & FISHERIES

Judgment Rendered: ___OCT 0 2 2019___

* * * * *

On Appeal from the
Twenty-First Judicial District Court
In and for the Parish of St. Tangipahoa
State of Louisiana
Docket No. 2014-0000974

Honorable Charlotte H. Foster, Judge Presiding

* * * * *

C. Arlen Braud, II          Attorneys for Appellant/Plaintiff
Michelle O. Gallagher       Dane Thomas
Steven D. Jackson
Mandeville, Louisiana


Henry S. Provosty           Attorneys for Appellee/Defendant
Lena D. Giangrosso          State of Louisiana,
New Orleans, Louisiana      Department of Wildlife & Fisheries

* * * * *

BEFORE: GUIDRY, THERIOT, AND PENZATO, JJ.

**PENZATO, J.**

Appellant, Dane Thomas, appeals a trial court judgment following a jury trial, finding Thomas to be partially at fault and Appellee, State of Louisiana, Department of Wildlife & Fisheries (LDWF), to be partially at fault for an accident resulting from a work-related injury aboard a boat owned by LDWF. Thomas brought suit alleging LDWF violated the Jones Act, 46 U.S.C. § 30104 *et seq.*,[1] and general maritime law and that he was entitled to damages, including maintenance and cure obligations under the general maritime law. Thomas further appeals a trial court judgment denying his motion for new trial. For the reasons that follow, we affirm the judgments of the trial court.

## TIMELINESS OF APPEAL

At the outset, we note that the timely filing of a motion for appeal is a condition precedent for an appellate court properly to obtain jurisdiction over an action. *Dupuy v. Dupuy*, 2000-2744 (La. App. 1st Cir. 3/28/01), 808 So. 2d 562, 565. Absent the timely filing of an appeal, or petition for judicial review of an administrative ruling, the courts of this state lack jurisdiction to review that ruling. *Robinson v. City of Baton Rouge*, 566 So. 2d 415, 418 (La. App. 1st Cir. 1990). An appellate court can dismiss an appeal at any time for lack of jurisdiction if it is untimely. La. C.C.P. art. 2162.

Following a jury trial, the trial court signed a judgment on May 15, 2017. Notice of the judgment was issued on the same date. From the record, it appears that the motion for new trial was not filed until June 2, 2017, which is untimely. "The delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required

---

[1] Although Thomas's petition refers to the former statute of 46 U.S.C. § 688 *et seq.*, the current version of the Jones Act is 46 U.S.C. § 30104 *et seq.*

2

by Article 1913." La. C.C.P. art. 1974. If the motion for new trial is untimely, the January 10, 2018 devolutive appeal taken from the May 15, 2017 judgment is also untimely. *See* La. C.C.P. art. 2087; *Dupuy*, 808 So. 2d at 565. After a hearing, the trial court denied the motion for new trial on December 4, 2017. Thomas filed a devolutive appeal from the May 17, 2017 judgment and the December 4, 2017 denial of the motion for new trial on January 10, 2018. On September 21, 2018, this court issued an *ex proprio motu* rule to show cause as to whether or not the appeal should be dismissed as untimely. Thomas filed a response to the rule to show cause attaching several documents and arguing that he had timely fax filed his motion for new trial in compliance with La. R.S. 13:850. Since this court could not receive the new evidence submitted by Thomas, and the record showed that the appeal was untimely, on November 13, 2018, we issued an interim order remanding the matter to the trial court to make an express determination as to the precise date on which the motion for new trial was filed. *See Hazey v. McCown*, 2001-0929 (La. App. 1st Cir. 5/10/02), 818 So. 2d 932, 936.

On December 13, 2018, the record was supplemented with several documents. Another panel of this court referred the rule to show cause to this merits panel. Even after the supplementation of the record, the record did not contain sufficient information for this court to make a factual determination as to whether Thomas complied with the requirements of La. R.S. 13:850[2] when the motion for new trial was filed. Therefore, we issued an interim order to the trial court on March 21, 2019, ordering the trial court to conduct an evidentiary hearing to determine the precise date on which Thomas fax filed his motion for new trial and the precise date on which the original pleading and filing fees were delivered

---

[2] A faxed filing is deemed complete at the time the fax transmission is received by the clerk of court. La. R.S. 13:850(A). However, within seven days of the faxed filing, the sender must forward the original document, the filing fee, and the transmission fee to the clerk of court. La. R.S. 13:850(B).

3

to the trial court, as well as to issue a *per curiam* with the trial court's findings on these issues.

In compliance with this court's order, the trial court held an evidentiary hearing and submitted a *per curiam* to this court, determining that Thomas fax filed the motion for new trial on May 24, 2017, and filed the original motion for new trial, along with the applicable filing fees, on June 2, 2017. Therefore, Thomas complied with La. R.S. 13:850 and timely filed the motion for new trial. Consequently, we maintain this appeal.

## FACTS AND PROCEDURAL HISTORY

Thomas, an Enforcement Agent with LDWF, was injured on or about February 11, 2012, when he tripped on a bow rope while working on a boat owned by LDWF. As a result, he sought recovery from LDWF, claiming negligence pursuant to the Jones Act, unseaworthiness of the vessel under general maritime law, and violation of the maintenance and cure obligations under general maritime law. Thomas amended his petition, alleging permanent and total disability and grievous physical and mental pain and anguish.

On the day of this accident, Thomas was investigating a deer hunting complaint near a bayou and canal, which required the use of a boat. Thomas testified that even though he was assigned to use the particular boat at issue, other agents were allowed to use it. He also stated that the boat needed many repairs before the date of his injury. On a previous occasion, he had broken one of the guideposts off the trailer, which was used to launch the boat into the water, and he had notified his supervisor of that incident. Additionally, the particular boat he used on the day of the accident contained a broken bow rope that was approximately eight-feet long and shorter than normal. In order to launch the boat, Thomas added another piece of rope to the shortened bow rope. Thomas explained that he had previously asked LDWF to replace the bow rope, but LDWF refused.

4

Since this particular boat did not have a side rope, he used the bow rope as a side rope when he needed to attach to another boat. Therefore, he could not keep the bow rope in a compartment, as he would not be able to reach it in time if he had to attach to another boat. On the date of his injury, the water level was high for the time of year. The boat was a twenty-two-foot boat on an approximately thirty-foot trailer. As Thomas was attempting to launch the boat into the water by himself, the wind and current pushed the boat sideways, causing it to stop suddenly. At the time, Thomas was attempting to "winch" the boat so that he could pull the trailer out of the water. Thomas had placed the bow rope on a step, which slid to the deck when the boat shifted, causing Thomas to trip on the bow rope and fall to the deck injuring himself. Thomas explained that had the guideposts been properly installed on the trailer, the boat would have stayed in the center even under the weather conditions that day.

On cross-examination, Thomas agreed that he was responsible for the general safety of the boat and for his own safety. He had also signed documents in 2009 and 2010 stating that an inspection must be completed prior to the use of a boat and that he was to check for unseaworthiness. Thomas reiterated on cross-examination that he had to lengthen the bow rope for the job he was performing, which was checking on other boaters, especially since he was working by himself. He also testified that even if he had exchanged the shorter bow rope with another boat's bow rope, it would have fallen on the deck. Thomas testified that he placed the coiled bow rope on a step, and during the movement of the boat, the bow rope fell to the deck, tripping him.

Lieutenant Cullen Sellers, Thomas's immediate supervisor, was unaware prior to the accident that the guidepost on the boat was broken or that the bow rope was too short. He only learned of these problems after the current lawsuit was filed and Thomas's deposition was taken. Captain Leonard Yokum, who was

5

Sellers's supervisor, testified that if anything was wrong with the boat, Thomas was required to notify his immediate supervisor, who would then tell the employee to take it to the repair shop to get an estimate. He also stated that there was no evidence that Thomas attempted to get an estimate for repair of either the guidepost or the bow rope prior to the accident.

A jury trial was held on March 7-10, 2017, and a verdict was reached in the early morning hours of March 10, 2017. Prior to the beginning of trial, both parties submitted proposed jury instructions and jury verdict forms. During the trial, counsel for Thomas asserted that LDWF's proposed jury verdict form contained confusing and complicated questions. Counsel also objected to the inclusion of Questions 4(A)-(C), which pertain to the "primary duty doctrine," in the final jury verdict form.

On March 9, 2017, the third day of trial, the jury arrived at 8:15 a.m. that morning, and after preliminary matters were handled, the jury was brought into the courtroom at 8:50 a.m. After both parties rested and the jury was charged, the jury began deliberations at 7:14 p.m. Between approximately 8:32 p.m. and 10:00 p.m., the jury returned to the courtroom on three separate occasions after sending several notes to the trial court on issues unrelated to this appeal. At 11:25 p.m., the jury indicated that they were deadlocked with a vote of 8-4 on Question 1 of the verdict form, which pertained to the negligence of LDWF. The trial court suggested to the parties that an *Allen* charge be given to the jury,[3] and counsel for Thomas suggested that due to the late hour, the jury be allowed to go home and return in the morning. The trial court declined to permit the jury to retire and return the next morning and offered either that a mistrial could be declared or the *Allen* charge could be read to the jury. After a discussion, the trial court noted that both parties

---

[3] *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

were agreeable to the *Allen* charge, and the trial court read the charge to the jury. The jury returned its verdict at 1:01 a.m. on March 10, 2017. The trial court polled the jury until approximately 1:30 a.m. and afterward accepted the verdict. While Thomas's counsel verbally noted that the polling was confusing, neither party objected to the jury polling or the acceptance of the verdict by the trial court.

On March 22, 2017, Thomas filed a motion for mistrial, alleging an inconsistent verdict; that no one was able to tally accurately the count of the jury polling; and that one of the jurors was biased against Thomas prior to the beginning of the trial. While no transcript from the motion for mistrial hearing or an order in conjunction therewith appears in the record, the minutes indicate that the trial court denied the motion for mistrial. Thereafter, the trial court signed a judgment in accordance with the jury's verdict on May 15, 2017. Thomas filed a motion for new trial again alleging an inconsistent verdict and that no one kept an accurate count during jury polling. In support of the motion for new trial, Thomas's counsel argued that he did not contest the polling count due to the late hour (around 1:30 a.m.). The trial court denied the motion for new trial on December 4, 2017, and issued written reasons for its denial. Thomas appeals the May 15, 2017 judgment and the December 4, 2017 denial of the motion for new trial.

## ASSIGNMENTS OF ERROR

Thomas asserts the following assignments of error:

1) The trial court erred when it entered judgment on a clearly and irreconcilably inconsistent jury verdict because the jury's affirmative response to question number 4(b) contradicted responses to question numbers 6 and/or 2 on the verdict form.

2) The trial court erred when it provided the jury a verdict form that was confusing, misleading and led to an inconsistent jury verdict because question number 4 was included over [Thomas's] objections.

3) The trial court erred when it denied [Thomas's] Motion for New Trial, abusing its discretion by failing to grant a new trial on peremptory grounds in the face of clear legal errors, or on discretionary grounds when there were good grounds therefor, including the 17-hour day the jury worked and clear evidence of jury exhaustion and confusion during polling for which there was no accurate accounting.

## APPLICABLE LAW

Admiralty claims may be brought in federal court pursuant to its admiralty jurisdiction or in state court under the savings to suitors clause. *See* 28 U.S.C. § 1333. In either case, federal substantive maritime law applies. *Graham v. Offshore Specialty Fabricators, Inc.*, 2009-0117 (La. App. 1st Cir. 1/8/10), 37 So. 3d 1002, 1008. State appellate courts sitting in maritime cases apply state standards of review. *See Milstead v. Diamond M Offshore, Inc.*, 95-2446 (La. 7/2/96), 676 So. 2d 89, 96. Louisiana appellate courts apply the manifest error-clearly wrong standard of review of facts in general maritime and Jones Act cases. *Graham*, 37 So. 3d at 1009. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trier of fact; and 2) whether the record further establishes that the finding is not manifestly erroneous. *Mart v. Hill*, 505 So. 2d 1120, 1127 (La. 1987). Thus, if there is no reasonable factual basis in the record for the trier of fact's finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. *See Stobart v. State, through Dep't of Transp. and Dev.*, 617 So. 2d 880, 882 (La. 1993). If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Graham*, 37 So. 3d at 1009.

8

The Jones Act allows an injured seaman to bring a negligence suit against his employer. 46 U.S.C. § 30104. The employer's potential liability extends to all personal injuries arising during the course of the seaman's employment, but proof of negligence is essential to recovery. *Foster v. Destin Trading Corp.*, 96-0803 (La. 5/30/97), 700 So. 2d 199, 208. Such negligence may arise in many ways, including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. *Zentner v. Seacor Marine, Inc.*, 2006-2049 (La. App. 1st Cir. 10/24/07), 977 So. 2d 962, 965. The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely, the duty to take reasonable care under the circumstances. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 336 (5th Cir. 1997) (en banc). The seaman bears the evidentiary burden of proving that a breach of the duty owed by the employer was a cause of his injuries. *Foster*, 700 So. 2d at 208. A seaman is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard in a Jones Act negligence action becomes that of the reasonable seaman in like circumstances. *Gautreaux*, 107 F.3d at 339 (overruling jurisprudence stating the seaman has only a slight duty of care to protect himself from the negligence of his employer and attributing to the employer a higher duty of care than that required under ordinary negligence principles).

The owner's duty to furnish a seaworthy ship is absolute and completely independent of the duty under the Jones Act to exercise reasonable care. *Graham*, 37 So. 3d at 1010. The ship owner's exposure for unseaworthiness is a form of liability without fault, in that liability is imposed upon the vessel owner, whether the owner is the injured seaman's employer or a third party, and without regard to

9

his due care or negligence. It applies if the seaman's injury was caused by a defective condition of the ship, its equipment, or appurtenances. *Graham*, 37 So. 3d at 1010. Unseaworthiness can also be manifested by an unsafe method of work, such as the failure by a ship owner to provide adequate equipment for the performance of an assigned task. *Graham*, 37 So. 3d at 1010. This duty is non-delegable; it extends even to conditions of unseaworthiness created by third parties without any knowledge on the part of the owner. *Foster,* 700 So. 2d at 209 n.5. To establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness. *Graham*, 37 So. 3d at 1010. A plaintiff's own fault will proportionately reduce his recovery for injuries caused by negligence or unseaworthiness. *See Foster,* 700 So. 2d at 209.

At trial, LDWF relied upon the defense of the primary duty doctrine, and requested a jury charge and corresponding jury interrogatories in connection therewith. This doctrine was first articulated by Judge Learned Hand in *Walker v. Lykes Bros. S.S. Co.*, 193 F.2d 772, 773 (2d Cir. 1952). The primary duty doctrine provides that when a seaman is injured due to a breach of a duty he has consciously assumed as a term of his employment, he is barred from recovery under the Jones Act or a general maritime unseaworthiness claim. *Walker*, 193 F.2d at 773. *Walker* distinguished between an employee's duty to exercise ordinary prudence for his own protections, which is imposed on everyone by the law, and an employee's affirmative duty to his employer, which is "consciously assumed as a term of his employment." *Walker*, 193 F.2d at 773. The court held that when the employee breached the latter duty, recovery is completely barred. *Walker*, 193 F.2d at 773.

Since *Walker* was decided, the defense of assumption of the risk has been subsumed within the doctrine of comparative fault. *Nat'l Marine Serv. Inc. v. Petroleum Serv. Corp.*, 736 F.2d 272, 274 and 276-77 (5th Cir. 1984). However, a few circuits, besides the United States Court of Appeals for the Second Circuit, have also applied the primary duty doctrine. *Peymann v. Perini Corp.*, 507 F.2d 1318, 1322-23 (1st Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975); *Yehia v. Rouge Steel Corp.*, 898 F.2d 1178, 1182 (6th Cir. 1990) (while not applying the primary duty doctrine, the court noted that a primary duty doctrine instruction was an option under the appropriate facts); *Northern Queen Inc. v. Kinnear*, 298 F.3d 1090, 1095-98 (9th Cir. 2002).

The United States Court of Appeals for the Fifth Circuit (Fifth Circuit) addressed the primary duty doctrine in *Gautreaux v. Scurlock Marine, Inc.*, 84 F.3d 776, 782 (5th Cir. 1996), *reinstated in relevant part*, 107 F.3d 331, 339 (5th Cir. 1997) (en banc), where the jury apportioned 95% of fault to the defendant and 5% of fault to the seaman. *Gautreaux*, 84 F.3d at 779. The defendant appealed, claiming that the jury should have been instructed regarding the primary duty doctrine. *Gautreaux*, 84 F.3d at 782. The court noted that there was some jurisprudence to support the contention that a seaman should be barred from recovery if his negligent conduct alone caused his injury, **and** his employer was completely free from fault. *Gautreaux*, 84 F.3d at 782. The court found that the defendant was slightly negligent and that the defendant's negligence contributed to the plaintiff's injury. *Gautreaux*, 84 F.3d at 782.

On rehearing, the Fifth Circuit did not discuss the primary duty doctrine but held that the principles of ordinary negligence applied under the Jones Act, rather than an employer being liable even for the slightest negligence. *Gautreaux*, 107 F.3d at 335. The Fifth Circuit clarified that an employer is liable under the Jones Act if the negligence of its employees or agents played even a small role in causing

11

the injury or death for which damages are sought. *Gautreaux*, 107 F.3d at 335. However, the employer's standard of care is not greater than that of ordinary negligence. *Gautreaux*, 107 F.3d at 339. Furthermore, the seaman is obliged to act with ordinary prudence under the circumstances, which include the seaman's own experience, training, or education. *Gautreaux*, 107 F.3d at 339. Therefore, Fifth Circuit precedence indicates that a plaintiff's negligence in failing to perform a duty assumed in the course of employment may reduce, but does not bar, plaintiff's recovery, unless the plaintiff's negligence is the sole cause of the injury. So long as the injury was caused at least in part by the negligence of the employer, the employer is exposed to liability. *See Gautreaux*, 107 F.3d at 335; *Sanders v. Diamond Offshore Drilling, Inc.*, No. CIV. A. 00-2307, 2002 WL 31654973, at *2 (E.D. La. Nov. 21, 2002).

Subsequently, the court in *Patterson v. Omega Protein, Inc.*, No. CIV. A. 13-6293, 2014 WL 4354461, at *3 (E.D. La. Sept. 2, 2014) (quotation and citations omitted), also discussed the limited application of the primary duty doctrine as follows:

> "A seaman's contributory negligence will not bar his recovery, but may reduce the amount of damages owed proportionate to his share of fault." A defendant must bear responsibility if his negligence played any part, even the slightest, in producing an injury. The primary duty doctrine, **to the extent still applicable in Jones Act cases, is only an absolute bar to recovery if the seaman has caused his own injury by breaching a primary duty to his employer *and* the employer is completely free from fault.** [Emphasis added].

*Nelton v. Cenac Towing Co. LLC*, No. 10-373, 2011 WL 289040 at *17 (E.D. La. Jan. 25, 2011), also noted that "while several courts of appeals have acknowledged the doctrine, ... they have significantly narrowed its scope[.]" The modern form of the primary duty doctrine is an absolute bar to recovery only if there is "a finding of no negligence [on the part] of the employer." *Nelton*, 2011 WL 289040 at *17 (*quoting Kelley v. Sun Transp. Co.*, 900 F.2d 1027, 1031 (7th Cir. 1990)). *Nelton*

12

noted that the Fifth Circuit has aligned itself with the decisions limiting the primary duty doctrine to bar recovery of a seaman only if his negligent conduct alone caused his injury, and his employer was completely free from fault. *Nelton*, 2011 WL 289040 at *17 (*citing Gautreaux*, 84 F.3d at 782; *Kendrick v. Ill. Cent. Gulf R.R. Co.*, 669 F.2d 341, 344 (5th Cir. 1982)).

Several cases following *Gautreaux* have determined that the Fifth Circuit does not recognize the primary duty doctrine. *Luwisch v. American Marine Corp.*, No. CV 17-3241, 2019 WL 1435932, at *11 (E.D. La. Mar. 31, 2019); *Whitman v. Hercules Offshore Corp.*, No. CIV A 06-0229, 2006 WL 3718225, at *4 (W.D. La. Dec. 15, 2006); *See Sanders*, 2002 WL 31654973, at *2 ("The Court has found no case in which the Fifth Circuit embraced the 'primary duty' [doctrine] ..."); *Cameron v. United States*, 135 F.Supp.2d 775, 778 (S.D. Tex. 2001) (applying the primary duty [doctrine] would essentially amount to assumption of risk, long since abolished in maritime law). In *Dejean v. Caillou Island Towing Co.*, No. CV 16-14287, 2017 WL 3024264, at *2 (E.D. La. July 17, 2017), the court held that the defendant did not establish that it was free from fault, and noted, "the primary duty [doctrine], to the extent it is even followed in the Fifth Circuit, does not operate as an absolute bar to recovery on either the Jones Act or unseaworthiness claim." Therefore, to the extent the primary duty doctrine has been recognized by the Fifth Circuit, it has only been recognized where the defendant is free from fault.

Prior to *Gautreaux*, this court addressed the primary duty doctrine in *Collins v. Texaco, Inc.*, 607 So. 2d 760, 765-66 (La. App. 1st Cir. 1992), where defendants claimed that the plaintiff owed an independent, primary duty to maintain the vessel and breached the duty by failing to repair the latch. This court noted that the defense of the primary duty doctrine provides that when a seaman is injured due to a breach of a duty he has consciously assumed as a term of his employment, he is barred from recovery under the Jones Act or a general maritime unseaworthiness

13

claim. *Collins*, 607 So. 2d at 765. Plaintiff questioned the continued viability of the primary duty doctrine, asserting that the Fifth Circuit rejected *Walker's* distinction between breach of a primary employment duty, which acts as a complete bar to recovery, and contributory negligence, which serves merely to reduce recovery. This court held that the trier of fact was entitled to determine whether the evidence established that the plaintiff was responsible for repairing the latch at issue and if his failure to do so should bar recovery. *Collins*, 607 So. 2d at 766. Nevertheless, this court determined that nothing in the record supported the conclusion that the plaintiff understood the terms of his employment to include all repairs to the vessel or that the plaintiff "consciously" assumed responsibility under the terms of his employment for the type of repair work required, and therefore, had no primary duty to undertake the repairs. Consequently, this court found no error in the trial court's failure to bar the plaintiff's recovery based on the primary duty doctrine. *Collins*, 607 So. 2d at 766.

The Louisiana Supreme Court addressed the primary duty doctrine in *Foster*, 700 So. 2d at 205-06. The plaintiff, a relief captain aboard a vessel, suffered an injury while walking across a deteriorated board placed between two barges used as a shortcut rather than using the walkway. The Louisiana Supreme Court stated that comparative negligence applies to both unseaworthy claims as well as Jones Act negligence actions. *Foster*, 700 So. 2d at 204. The effect of finding negligence on the part of a seaman seeking recovery in a seaworthiness action or Jones Act claim is only to reduce damages proportionately but not to bar recovery. A seaman's negligence will not defeat his claim under the Jones Act and general maritime law but may be considered as comparative negligence to mitigate damages in proportion to the degree of his negligence. *Foster*, 700 So. 2d at 204.

The Louisiana Supreme Court held that there was a reasonable basis to deny plaintiff's claim under the Jones Act because there was no evidence of negligent

14

conduct on the part of the employer. *Foster*, 700 So. 2d at 205. With regard to the seaworthiness of the vessel, the defendant argued that the primary duty doctrine was still viable and prevented any recovery by the plaintiff. *Foster*, 700 So. 2d at 205. In originally discussing the issue, the Louisiana Supreme Court specifically stated that "[r]ecovery under the primary duty doctrine is not barred unless the plaintiff is wholly responsible for his injury." *Foster*, 700 So. 2d at 206. The Louisiana Supreme Court initially apportioned fault 50% to the plaintiff and 50% to the defendant. *Foster*, 700 So. 2d at 206. However, on rehearing, without discussing the primary duty doctrine, the Louisiana Supreme Court determined that the plaintiff was the sole cause of his injuries and affirmed the court of appeal decision finding plaintiff 100% liable. *Foster*, 700 So. 2d at 209-10. In doing so, the Louisiana Supreme Court stated, "a plaintiff's own fault will proportionately reduce his recovery for injuries caused by unseaworthiness. However, if a seaman's own negligence was the sole cause of his injuries, recovery will be barred." *Foster*, 700 So. 2d at 209 (citations omitted).

Relying on *Foster*, several appellate cases recognized that comparative negligence applies in both Jones Act and unseaworthiness actions. *Breeland v. Falcon Drilling Co.*, 98-1790 (La. App. 3rd Cir. 5/5/99), 733 So. 2d 1217, 1220, *writ denied*, 99-2289 (La. 11/12/99), 750 So. 2d 196 (finding plaintiff-seaman was 100% at fault for his own injuries); *Aycock v. Ensco Offshore Co.*, 2002-0853 (La. App. 3d Cir. 12/18/02), 833 So. 2d 1246, 1250 (affirming 90% fault placed on plaintiff-seaman); *Mack v. Kellogg Brown & Root, Inc.*, 2005-1245 (La. App. 4th Cir. 9/13/06), 941 So. 2d 54, 58, *writ denied*, 2006-2461 (La. 12/15/06), 945 So. 2d 691 (affirming finding that plaintiff-seaman's own negligence was sole cause of his injuries, thus barring his recovery); *Richard v. Bayou Lafourche Fresh Water Dist.*, 2008-2263 (La. App. 1st Cir. 5/8/09), 2009 WL 1279039, *5 (affirming defendant solely liable for injuries to plaintiff-seaman).

15

With these legal precepts in mind, we address Thomas's assignments of error.

## Confusing and/or Misleading Jury Interrogatories

We initially address Thomas's second assignment of error in which he argues that the jury interrogatories were confusing and misleading to the jury. Thomas asserts that he objected to the inclusion of jury interrogatories 4(A)-(C) as confusing and being inapplicable in the Fifth Circuit. On appeal, Thomas claims that Questions 4(A)-(C) should have been eliminated or that a direction should have been given that an affirmative response to Questions 1 or 2 on the verdict form required the jury to skip Questions 4(A)-(C). The jury verdict form, as described in the jury foreman's publication of the verdict, states:

> No. 1, "Do you find by a preponderance of the evidence that the [LDWF] was negligent and that such negligence was a cause of damage to the plaintiff?" "Yes."
>
> No. 2, "Do you find by a preponderance of the evidence that the vessel was unseaworthy and that such unseaworthiness was a proximate cause of damage to the plaintiff?" "No."
>
> * * *
>
> No. 4(A) "Do you find by a preponderance of the evidence that plaintiff's injury was caused solely by plaintiff's failure to perform a duty[,] which he consciously assumed as a term of his employment?" "No."
>
> [No.] 4(B) "Do you find by a preponderance of the evidence that plaintiff was injured solely by the dangerous condition that plaintiff either created or that he knew existed and in the proper exercise of his employment duties, he should have controlled or protected against?" "Yes."
>
> [No.] 4(C) "Do you find by a preponderance of the evidence that plaintiff's injury was caused solely by a knowing failure to carry out his responsibility to protect against that unsafe condition?" "No."
>
> If you answered "Yes" to questions 4(A), (B), **and** (C), you need not consider or answer any of the following ones. If you answered "Yes" proceed. [Emphasis added].

No. 5, "If you answered "Yes" to Questions 1 and 2, "Do you find by a preponderance of the evidence that plaintiff was negligent and that such negligence was the cause of plaintiff's own damage?" "Yes."

If you answered "Yes," proceed to 6.

[No. 6] "If you answered "Yes" to Question No. 5, what proportion or percentage of plaintiff's damage do you find from a preponderance of the evidence to have been legally caused by the negligence of the respective parties?" "Answer in terms of percentage which must add up to equal 100 percent."

| | |
|---|---|
| [LDWF] | 27.6% |
| Dane Thomas | 72.4% |
| Total | 100% |

The trial court is required to instruct jurors on the law applicable to the cause submitted to them. *See* La. C.C.P. arts. 1792(A) and 1796(B); *LeBlanc v. Landry,* 2008-1643 (La. App. 1st Cir. 6/24/09), 21 So. 3d 353, 358, *writ denied,* 2009-1705 (La. 10/2/09), 18 So. 3d 117. The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate. The instructions must correctly state the law and be based on evidence adduced at trial. *LeBlanc,* 21 So. 3d at 358.

The trial court is not required to give the precise instruction submitted by either party but must give instructions that properly reflect the law applicable in light of the facts of the particular case. Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial court must correctly charge the jury. If the trial court omits an applicable, essential legal principle, its instructions do not adequately set forth the issues to be decided by the jury and may constitute reversible error. Correlative to the trial court's duty to charge the jury as to the law applicable in a case is a responsibility to require that the jury receives only the correct law. *Georgia-Pacific, LLC v. Dresser-Rand Co.,* 2015-2002 (La. App. 1st

17

Cir. 10/31/16), 207 So. 3d 1131, 1137, *writ denied*, 2016-02114 (La. 1/13/17), 215 So. 3d 248.

Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the instructions correctly state the substance of the law. But when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. *Georgia-Pacific*, 207 So. 3d at 1137. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury instruction to determine if the charges adequately provided the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the instructions adequately guided the jury in its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. *Georgia-Pacific*, 207 So. 3d at 1137; *See Wooley v. Lucksinger*, 2009-0571 (La. 4/1/11), 61 So. 3d 507, 574. Additionally, when small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. *Wedgeworth v. Mixon*, 2015-686 (La. App. 3rd Cir. 2/3/16), 184 So. 3d 876, 881, *writ denied*, 2016-00422 (La. 4/22/16), 191 So. 3d 1049. The standard of review in determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case. *Georgia-Pacific*, 207 So. 3d at 1137.

Likewise, the jury's verdict form may not be set aside unless the form is so inadequate that the jury is precluded from reaching a verdict based on correct law and facts. Jury forms or interrogatories that are misleading or confusing may be

18

reversible error. Jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict. If the verdict form does not adequately set forth the issues to be decided by the jury (*i.e.*, omits an applicable essential legal principle or is misleading and confusing), such interrogatories may constitute reversible error. *Georgia-Pacific*, 207 So. 3d at 1137-38.

A jury charge conference was held during the trial, at which the trial court asked if the parties were able to review and reach an agreement on the proposed jury instructions and verdict form (jury interrogatories). In connection with the jury interrogatories, which were addressed first by the court, Thomas's counsel argued that the Fifth Circuit did not follow the primary duty doctrine, and LDWF counter-argued that a court in another parish had previously allowed them to use jury interrogatories similar to Questions 4(A)-(C), which were fashioned from a Model Federal Jury Instruction. Thomas's counsel lodged a formal objection to the inclusion of the primary duty doctrine in the verdict form. There is nothing in the record to reflect that Thomas requested a direction be included on the verdict form that if Questions 1 or 2 were answered affirmatively, then Questions 4(A)-(C) should be skipped by the jury. Thomas also objected to the fact that "most of" the questions contained in the verdict form were confusing. However, Thomas made no specific objection that Questions 4(A)-(C) were confusing.

Questions 4(A)-(C) were derived from a jury instruction suggested by LDWF regarding the primary duty doctrine, which was based on an instruction contained in the *5 Modern Federal Jury Instructions—Civil* ¶ 90.03, Instruction 90-31 (¶ 90.03, Instruction 90-31).[4] Although this particular reference is not

---

[4] No assignment of error has been made regarding the inclusion of the primary duty doctrine in the jury instructions.

19

contained in the record, we note that the comments to this instruction, entitled "Breach of Primary Duty" specifically state:

> A district court in the Fifth Circuit explained that the primary duty [doctrine] operates to bar recovery only if the seaman has caused his own injury by breaching a primary duty to his employer and the employer is completely free from fault.

¶ 90.03, Instruction 90-31, comments (citing Dejean, 2017 WL 3024264 at *2; Patterson, 2014 WL 4354461 at *3; Nelton, 2011 WL 289040 at *17). The comment further noted, "But there is some question whether the primary duty doctrine is even recognized in the Fifth Circuit." ¶ 90.03, Instruction 90-31, comments (citing Whitman, 2006 WL 3718225 at *4 ("The Fifth Circuit does not recognize the primary duty doctrine as a bar to recovery in a Jones Act negligence suit.")). We further note that a review of the *5th Circuit Federal Pattern Jury Instructions* reveals no instruction similar to the one given by the trial court. Instead, the only Fifth Circuit pattern jury instruction dealing with seamen and contributory negligence is *Pattern Civ. Jury Instr. 5th Cir.* 4.7 (2014), which is totally dissimilar to the jury instruction suggested by LDWF and ultimately used by the trial court.

Based upon our review of the case law cited above, the primary duty doctrine has only been recognized in *dicta* by the Fifth Circuit in the limited circumstance where there was no fault on the part of defendant. *Gautreaux*, 84 F.3d at 782. Louisiana courts have recognized the primary duty doctrine but only in the same limited circumstance. *See Foster*, 700 So. 2d at 209. Therefore, we do find the trial court committed legal error by including the primary duty doctrine on the verdict form without a direction that it was to apply only if the defendant was free from fault.

However, as stated above, to set aside the verdict form, the jury must have been erroneously instructed and the error probably contributed to the verdict. The

law is clear that the review function is not complete once error is found. Prejudice to the complaining party cannot automatically be assumed from the mere fact of an error. Instead, the reviewing court must then compare the degree of the error with the adequacy of the jury instructions as a whole and the circumstances of the case. *Wooley*, 61 So. 3d at 574.

> [T]he manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Thus, on appellate review of a jury trial the mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial *de novo,* without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case.

*Wooley*, 61 So. 3d at 575 (*quoting Adams v. Rhodia, Inc.*, 2007-2110 (La. 5/21/08), 983 So. 2d 798, 805).

Taking the jury instructions and verdict form as a whole, we cannot find that the error probably contributed to the verdict. Ultimately, the jury instructions and verdict form did not mislead the jury to the extent it was prevented from dispensing justice. Even without a direction on the jury verdict form that an affirmative response to Questions 1 or 2 required the jury to skip Questions 4(A)-(C), the jury rejected the primary duty doctrine, which would have barred recovery by Thomas, and applied the principles of comparative fault, the correct law.

The jury was presented with the facts that on a previous occasion, Thomas had broken a guidepost off the trailer he was using on the date of the accident. The boat also had a shorter than normal rope, which Thomas tied to another piece of rope. Although Thomas testified that he reported both of these problems to his supervisor, Lieutenant Sellers denied knowing about either problem until after the accident. There was also testimony that Thomas did not attempt to get an estimate for repair of either the guidepost or the bow rope until after the accident and that Thomas did not follow the protocol for informing his immediate supervisor. There

was further evidence that Thomas placed the bow rope on a step, which fell to the deck when the wind pushed the boat, causing Thomas to trip and injure himself. Thomas agreed that he was responsible for the general safety of the boat and his own safety, and the jury was informed that the agent was responsible for performing safety checks on the boat.

As we stated previously, an employer has a duty under the Jones Act of ordinary prudence, namely the duty to take reasonable care under the circumstances. *Gautreaux*, 107 F.3d at 334-36. The reasonable person standard in a Jones Act negligence action becomes that of a reasonable seaman in like circumstances. *Gautreaux*, 107 F.3d at 339. A plaintiff's own fault will proportionately reduce his recovery for injuries caused by negligence. *See Foster*, 700 So. 2d at 209. Applying the manifest error standard of review, we find a reasonable factual basis in the record for the jury's application of comparative fault to the facts of this case. We further do not find that the jury's factual finding as to the allocation of fault was clearly wrong.

The jury ultimately applied the applicable law of comparative fault and rejected the primary duty doctrine. Therefore, we do not find the verdict form so inadequate that the jury was precluded from reaching a verdict based on correct law and facts.

**Inconsistent Verdict**

In Thomas's first assignment of error, he complains that the trial court's jury verdict form (or jury interrogatories) were irreconcilably inconsistent, amounting to reversible error and warranting a *de novo* review of this matter, or alternatively, a remand for a new trial. As outlined previously, Thomas asserts that Question 4 of the verdict form is the principal problem. Thomas asserts that the jury's affirmative response to Question 4(B) is inconsistent with the jury's assessment of 27.6% fault to LDWF in response to Question 6.

22

We first note that LDWF asserts that Thomas waived his right to raise the issue of an inconsistent verdict on appeal due to his failure to object at the trial. A party is precluded from raising the issue of an inconsistent verdict on appeal only if he fails to object at the reading of the verdict **or** in post-trial motions. *Metz v. Howard*, 93-726 (La. App. 5th Cir. 1/25/94), 631 So. 2d 1248, 1250-51; *Bourque v. Gulf Marine Transp., Inc.*, 480 So. 2d 337, 340 (La. App. 3rd Cir. 1985); *see Richard v. Gisler*, 2016-1472 (La. App. 1st Cir. 8/16/17), 2017 WL 3498910, *5. A party who files a post-trial motion for new trial objecting to inconsistencies in the jury verdict is not precluded from raising the issue on appeal. *Daigle v. White*, 544 So. 2d 1260, 1262 (La. App. 4th Cir. 1989).

In the present case, Thomas filed a post-trial motion for mistrial prior to the signing of the judgment and a post-trial motion for new trial following the signing of the judgment, both of which raised the issue of an inconsistent jury verdict. Therefore, Thomas did timely raise the issue of an inconsistent jury verdict, and we will address this assignment of error.

Thomas urges this court to apply the provisions of La. C.C.P. art. 1812 and 1813(E) to either render *de novo* review of this matter, or alternatively, to remand for a new trial. Louisiana Code of Civil Procedure article 1812 controls the use of a special verdict form, a special written finding upon each issue of fact. La. C.C.P. art. 1812(A); *See Palumbo v. Shapiro*, 2011-0769 (La. App. 4th Cir. 12/14/11), 81 So. 3d 923, 928, *writ denied*, 2012-0140 (La. 3/23/12), 85 So. 3d 93. The jury's return of inconsistent answers is addressed by La. C.C.P. art. 1813(E), which Louisiana courts have consistently applied to special verdict forms composed of interrogatories alone. *Banks v. Children's Hosp.*, 2013-1481 (La. App. 4th Cir. 12/17/14), 156 So. 3d 1263, 1271. Louisiana Code of Civil Procedure article 1813 provides that it applies specifically to a general verdict accompanied by written interrogatories. In *Palumbo*, the court noted that the Louisiana Supreme Court in

23

*Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So. 2d 742, 747, has instructed appellate courts that when the answers on a special verdict form are inconsistent, those courts are to apply the provisions of La. C.C.P. art. 1813(E). *Palumbo*, 81 So. 3d at 929. Louisiana Code of Civil Procedure article 1813(E) mandates that when jury answers are inconsistent, the court shall not direct the entry of judgment but may return the jury for further consideration or may order a new trial. *See Ferrell*, 650 So. 2d at 747.

We must first determine whether the answers to the jury interrogatories were inconsistent in order for La. C.C.P. art. 1813(E) to apply. A reviewing court must exercise great restraint before disregarding a jury verdict and turning to *de novo* review. *Meaux v. Hilcorp Energy Co.*, 2009-591 (La. App. 3rd Cir. 12/9/09), 26 So. 3d 875, 880, *writ denied*, 2010-0441 (La. 4/30/10), 34 So. 3d 294 (*quoting Adams v. Rhodia, Inc.*, 2007-2110 (La. 5/21/08), 983 So. 2d 798, 805). A verdict based on the interrogatories should not be set aside unless the form prevented the jury from reaching a legally correct verdict. *Palacios v. Louisiana & Delta R.R., Inc.*, 2005-1168 (La. App. 3rd Cir. 5/3/06), 930 So. 2d 1086, 1091, *writ denied*, 2006-1909 (La. 11/3/06), 940 So. 2d 665 (*quoting Chatelain v. Rabalais*, 2004-28 (La. App. 3rd Cir. 7/7/04), 877 So. 2d 324, 334). An inconsistent verdict, however, must be read as a whole, with the rule that the judgment shall be just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164; *Chambers v. Graybiel*, 25,840 (La. App. 2nd Cir. 6/22/94), 639 So. 2d 361, 368 *writ denied*, 94-1948 (La. 10/28/94), 644 So. 2d 377 (*citing Parliman v. Kennelly*, 520 So. 2d 445 (La. App. 5th Cir. 1988)). The court may refer to the entire record to construe an ambiguous verdict. *Chambers*, 639 So. 2d at 368 (*citing Rodrigue v. Ziifle*, 288 So. 2d 630 (La. 1974)).

In support of his position that the jury verdict is inconsistent, Thomas relies upon *Ferrell*, which we find to be distinguishable. The inconsistency in the *Ferrell*

verdict that interdicted the fact-finding process involved a situation in which a negligent defendant was not assessed any percentage of fault, while the plaintiff who was determined to have been negligent, but not a proximate or legal cause of the accident, was apportioned with thirty percent of the fault. *See Ferrell*, 650 So. 2d at 747. Also distinguishable, Thomas relies upon *Palumbo*, wherein the jury found the plaintiff to be comparatively at fault and assigned her with 40% liability. The jury also assigned a percentage of fault to two defendants who had no legal duty and to a third defendant who was found not to be negligent and not to have caused any damages Furthermore, the judgment awarded plaintiff 100% of the damages with no reduction for her comparative fault. *Palumbo*, 81 So. 3d at 926-27. Finally, Thomas directs this court's attention to *Oddo v. Asbestos Corp.*, 2014-0004 (La. App. 4th Cir. 8/20/15), 173 So. 3d 1192, *writ denied*, 2015-1712 (La. 11/6/15), 180 So. 3d 308. In *Oddo*, the jury found that the negligence of six of the nine empty-chair defendants was a substantial contributing cause to the plaintiff's injury but assigned no fault to them. *Oddo*, 173 So. 3d at 1204. Further, the jury answered two identical questions concerning whether a defendant's product was a substantial cause in a directly opposite fashion. The present case does not involve a jury finding of liability with no assignment of fault or a finding of no liability with an assignment of some percentage of fault. Rather, both plaintiff and defendant were found to be negligent; their negligence was found to be a cause of the resultant harm; and both were assessed a percentage of fault that combined to total 100%.

We disagree with Thomas's assertion that the jury's affirmative response to Question 4(B) is inconsistent with the jury's assessment of 27.6% fault to LDWF in response to Question 6. Following a review of the record as a whole, we find that Question 4(B) cannot be read in isolation to Questions 4(A) and 4(C). The plaintiff has acknowledged in brief that Question 4, which includes subparts (A),

25

(B), and(C), is determinative of the applicability of the primary duty doctrine. While the Fifth Circuit and Louisiana courts have recognized the doctrine only in a limited circumstance, the jury was at least correctly charged on the premise that all three factors (which are reflected as 4(A), (B), and (C)) concerning a seaman's liability must be answered in the affirmative if the doctrine is to be applicable. *See Kinnear*, 298 F.3d at 1095-96. (R. 1481-82). In responding in the affirmative to only one factor, the jury rejected any application of the theory. Therefore, there is ultimately no inconsistency in the jury's responses to Questions 4(A)-(C) and the assignment of a percentage of fault to the defendant that would require either a *de novo* review or remanding for a new trial as requested by Thomas. *See Landry v. Leonard J. Chabert Med. Ctr.*, 2002-1559 (La. App. 1st Cir. 5/14/03), 858 So. 2d 454, 462, *writs denied*, 2003-1748, 2003-1752 (La. 10/17/03), 855 So. 2d 761.

**Denial of Motion for New Trial**

Thomas's third assignment of error is that the trial court erred in not granting his motion for new trial on either peremptory or discretionary grounds, claiming that the jury verdict was clearly contrary to the law and discretionary grounds existed pertaining to the timing of the jury trial and verdict. Although the denial of a motion for new trial is generally a non-appealable interlocutory judgment, the court may consider interlocutory judgments as part of an unrestricted appeal from a final judgment. *Henry v. Sullivan*, 2016-0564 (La. App. 1st Cir. 7/12/17), 223 So. 3d 1263, 1272. A new trial shall be granted when the verdict or judgment appears clearly contrary to the law and the evidence. La. C.C.P. art. 1972. A new trial may also be granted on discretionary grounds if there is good cause. La. C.C.P. art. 1973. The standard of review of a judgment on a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. *Spann v. Gerry Lane Enterprises, Inc.*, 2016-0793 (La. App. 1st Cir. 8/24/18), 256 So. 3d

26

1016, 1025, *writ denied*, 2018-1584 (La. 12/3/18), 257 So. 3d 194, and *writ denied*, 2018-1649 (La. 12/17/18), 258 So. 3d 599.

Based upon our above discussion regarding Thomas's first two assignments of error and the legal precepts cited therein, we cannot say that the jury verdict form was clearly contrary to the law and the evidence. Therefore, we do not find that the trial court abused its discretion in denying the motion for new trial on peremptory grounds pursuant to La. C.C.P. art. 1972.

Thomas also claims that he was entitled to a motion for new trial based on discretionary grounds pursuant to La. C.C.P. art. 1973 due to the timing of the jury trial and verdict. Thomas directs our attention to the early morning hour of the verdict and the facts surrounding the polling of the jury.

Louisiana Code of Civil Procedure article 1631(A) provides that the "court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." The trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened. *Pino v. Gauthier*, 633 So. 2d 638, 648 (La. App. 1st Cir. 1993), *writs denied*, 94-0243, 94-0260 (La. 3/18/94), 634 So. 2d 858, 859.

Thomas argues that the circumstances of the late hour and length of day worked by the jury were more egregious than the facts of *Horton v. Mayeaux*, 2005-1704 (La. 5/30/06), 931 So. 2d 338, 344, where the Louisiana Supreme Court affirmed the trial court's ordering of a new trial, noting the jury had been "pushed to the max," and one witness's testimony concluded at 9:30 p.m., thirty minutes after the air conditioning shut down in the building on a late August night in south Louisiana. However, *Horton* does not mandate that a trial court should order a new trial under certain circumstances.

27

In the present case, the trial court gave written reasons for judgment following the denial of the motion for new trial. The trial court found that the jury's verdict was supported by the evidence. With regard to the polling of the jury, the trial court noted that at approximately 11:30 p.m.[5] both parties agreed to an *Allen* charge rather than having the trial court declare a mistrial. Furthermore, after the polling of the jury, the trial court asked if either party objected to the polling and/or verdict. Thomas's counsel did state that the polling was confusing but that he was not going to object to it. The trial court articulated that at the hearing on the motion for new trial, Thomas did not offer any evidence as to the polling of the jury. Therefore, the trial court found not only that Thomas waived any objection to the polling of the jury but also that there was insufficient evidence to support Thomas's allegations.

A party's failure to object to the manner of polling the jury, either at the time it was announced by the trial court or at any time during the polling, waives the objection. *See Taylor v. Tulane Med. Ctr.*, 98-1967 (La. App. 4th Cir. 11/24/99), 751 So. 2d 949, 962. Accordingly, because Thomas failed to object to the polling of the jury at the time it was announced or at any time during the polling, we find no error in the trial court's determination that Thomas waived any objection regarding the polling of the jury.

Furthermore, this court has recognized that the trial court has much discretion in determining whether a new trial should be granted pursuant to La. C.C.P. art. 1973. *Pitts v. Louisiana Med. Mut. Ins. Co.*, 2016-1232 (La. 3/15/17), 218 So. 3d 58, 66; *see also* La. C.C.P. art. 1971, Official Comment (d). We have explained that, generally, the only requirement has been that the trial court state an articulable reason or reasons as to why he is exercising his discretionary powers.

---

[5] Although the written reasons of the trial court indicate the time was 11:00 p.m., the record shows that the actual time this exchange occurred was approximately 11:30 p.m.

28

*Horton*, 931 So. 2d at 344 (internal citation removed). Unless an abuse of this discretion can be demonstrated, a trial court's action in granting or denying a new trial on discretionary grounds will not be reversed. *Horton*, 931 So. 2d at 344. After a review of the record, this court is unable to find that the trial court grossly abused its discretion in conducting the order and timing of the trial. *See ABS Servs., Inc. v. James Constr. Grp., L.L.C.*, 2016-0705 (La. App. 1st Cir. 12/21/18), 269 So. 3d 723, 736, *writ denied*, 2019-0473 (La. 6/17/19), 273 So. 3d 1212. Therefore, we find no abuse of discretion of the trial court in denying the motion for new trial on discretionary grounds.

## CONCLUSION

For the above and foregoing reasons, the appeal is maintained. The trial court's May 17, 2017 judgment on the jury verdict and the December 4, 2017 judgment denying the motion for new trial are affirmed. All costs of this appeal are assessed to Dane Thomas.

**APPEAL MAINTAINED; AFFIRMED.**